**KALM, INC., Appellant,**

v.

**Thomas William HAWLEY, Appellee.**

Court of Appeals of Kentucky.

May 6, 1966.

As Modified on Denial of Rehearings Oct. 14, 1966.

Oldham Clarke, James M. Cuneo, McElwain, Dinning, Clarke & Winstead, Winfrey P. Blackburn, Jr., Louisville, for appellant.

James W. Hendricks, Marshall, Cochran, Heyburn & Wells, Thomas W. Speckman, Louisville, Louis Cox, Hazelrigg & Cox, Frankfort, for appellee.

DAVIS, Commissioner.

The appellee, Thomas William Hawley, suffered severe personal injury when he struck his head on the bottom of a swimming pool maintained at a Holiday Inn Motel in Louisville. The appellant corporation, owner and operator of the motel, appeals from a judgment awarding appellee $150,000 for personal injuries and incidental expenses, pursuant to a jury's verdict. Four basic contentions for reversal are advanced by appellant: (1) There was no evidence of negligence by appellant; (2) the appellee was guilty of contributory negligence as a matter of law; (3) the instructions were erroneous, and (4) the verdict is excessive. Appellee prosecuted a cross-appeal asserting entitlement to interest at 6% rather than 3%. The conclusion reached by the court obviates the need to advert to any of the points except the question of contributory negligence.

Appellee was a registered patron of the motel when the accident occurred on July 6, 1962. He had been so registered at the motel, with his wife and three children, since July 2. He had stayed there also during the period from June 19 through June 24 of the same year. Appellee had used the swimming pool "three or four times" during his stay at the motel in June, but had done no diving from the point where he made the dive which resulted in his injury. On the day of the accident he had

dived twice from the diving board, but not from the side of the pool.

It appears that during the afternoon of July 6, appellee's eleven-year-old daughter, Denise, had received some diving instructions from Mrs. Lorene Thornton, the lifeguard at the pool. Appellee had observed Mrs. Thornton as she instructed Denise about diving; he testified that Mrs. Thornton dived from the side of the pool, not from the spring board. At about 8:30 or 9:00 p. m., Denise asked appellee to show her how to dive into the pool, and requested that he instruct her in the same diving technique which Mrs. Thornton had used. Thereupon appellee dived into the pool from the east side and sustained the injuries which constitute the basis of this litigation. The dive which appellee made is described in the evidence as a "pike dive"— one in which the diver enters the water head first, with arms and hands extended above the head, in as nearly vertical position as possible. It is a "deep" dive as contrasted with a "shallow" dive which may be accomplished by diving on a plane more nearly horizontal with the water's surface.

The swimming pool is irregular in shape. One of the witnesses compared it to a "squared" lion's head, with the mouth of the lion being where the diving board is situated, and the deep portion of the pool extending away from the "mouth" into the site of the "mane," which is the shallower part of the pool. Another witness suggested that the pool was somewhat "dog-leg" in contour. At any rate, the deepest portion of the pool is at its northern end; the northern wall is about twenty feet across, and has the diving board located approximately in the center. The shape of the pool is such that as the side walls extend southwardly from the diving board the east wall is longer than the west wall, as the pool turns to the west. Provision was made for a rope or "life-line" separating the shallow and deep portions of the pool (although the line was not in place on the night of the accident). The course of the line was an oblique one. Along the sides of the pool were nine separate markings, indicating depth of the water. Within the deep portion of the pool (i. e. the portion north of the "life-line") were two markers indicating a depth of eight feet. One of these markers was just under a ladder, on the west wall, across the pool from the point where appellee made the dive resulting in his injury. It is to be noted, however, that the marker on the west wall was not directly opposite appellee as he dived, but was several feet nearer to the diving board wall. The only other depth markers were in the shallower portion of the pool, south of the rope line. These markers reflected depths of five, four and three feet at various points in the pool. Appellee was standing approximately midway between a five-foot marker to his left and an eight-foot marker to his right when he made the dive.

The actual depth of the pool at the point of the dive was six feet, three inches. It was shown that the floor of the pool was constructed in such manner that there was a slope in the elevation of the pool's floor from the shallower portion to the deeper portion. Appellee admitted that he knew that the pool's floor sloped—as opposed to the idea that the variations in depths were accomplished by abrupt step-offs.

Witnesses for both sides, skilled and trained in diving, agreed that it is possible to dive safely in water having depth of less than six feet, but for appellee it was testified that eight feet is a minimum depth for a "deep" or "pike" dive. All of the expert witnesses agreed that no prudent person should dive into water without knowing its depth, but for appellee it was testified that a diver could prudently rely upon the depth markers on a pool. It was opined by expert witnesses for appellee that since the only depth markers in the "deep" end of the pool were the two which showed eight feet, a prudent person could assume that all of the water in the deep end of the pool had at least that much depth.

In a carefully prepared and well considered opinion, the trial judge treated the contributory negligence issue, in part, as follows:

"The law did not require the plaintiff to make a critical examination that the depth was sufficient to make the dive. In Boll v. Spring Lake Park, Inc., Mo., 358 S.W.2d 859, the Court said:
'He is not required to make a critical inspection to assure himself that it is safe.'

"Defendant relies on the case of Pinehurst Co. v. Phelps [163], Md. [68], 160 A. 736 and Richardson v. Ritter, 197 N. C. 108, 147 S.E. 676. These cases give support to the defendant's contention that plaintiff was negligent as a matter of law and that his negligence contributed as a proximate cause to his injuries. If the Kentucky cases were not at variance with these foreign cases relied upon by the defendant, the Court would have to sustain the contention of the defendant that a directed verdict for the defendant should have been given on the ground that plaintiff was contributorily negligent as a matter of law.

"However, the Kentucky cases of Louisville Water Co. v. Bowers, 251 Ky. 71, 64 S.W.2d 444 and Waddel's Adm'r v. Brashear, 257 Ky. 390, 78 S.W.2d 31 [98 A.L.R. 553], are at variance with the foreign cases relied upon by the defendant. * * *

"There is great similarity between the Bowers case and the case at bar and, therefore, I must follow the law as set forth in the Bowers case and hold that it was a question for the jury to determine as to whether or not plaintiff herein was guilty of contributory negligence."

As noted, the trial judge deemed himself bound under the doctrine of *stare decisis* to follow the *Bowers* opinion. Fairly read, the trial judge's opinion leaves the inference that but for his being "bound" by

*Bowers,* an opposite result would have been reached. We look to the *Bowers* opinion:

In *Bowers* the Louisville Water Company was in the process of filling the Crescent Hill swimming pool when plaintiff appeared there to swim. Plaintiff walked alongside the pool to the deep portion where he climbed into the pool on a ladder. He swam across the pool and emerged upon a ladder on the opposite side, from where he walked toward the shallow part of the pool. He came to a point opposite which was a five-foot depth mark; he dived in the water head first and struck his head against the bottom of the pool—which had an actual depth of less than two feet at the time of the accident.

Bowers testified that he was unaware that the pool was being filled, and supposed that it was at normal depth. He could not ascertain the depth of the water because the color of the water (green) was the same as the color of the pool bottom. The defendant showed that there were some women and children in the pool at the point where Bowers dived, and the depth of the water could have been gauged by observing the water level on their bodies.

In holding that Bowers was not as a matter of law guilty of assumption of risk, the court said:

"Clearly in a case like this the doctrine of assumed risk should go no further than to preclude a recovery where the patron voluntarily subjects himself to a peril that is known to him, or plainly observable by a person of ordinary prudence in his situation. Though it is true that appellant's witnesses testified in substance that the depth of the water was plainly discernible, and was also shown by the presence of bathers and by markers on the side of the pool, it must not be overlooked that appellee testified that he looked at the water, that the bottom was green, and the water of the same color, and that he could tell nothing about its depth. In view of the conflict in the

evidence, and of the rule that a patron of a place of public amusement for hire is not obliged to make a critical examination of the premises to determine whether they are safe, but has a right to assume that those in charge have provided a safe place and taken the proper precautions for his safety, (citing cases) it cannot be said as a matter of law that appellee in diving into the pool subjected himself to a known, or obvious, peril, and therefore assumed the risk. It follows that the motion for a peremptory instruction was properly overruled." Id., Ky., 64 S.W.2d at 446.

We have carefully considered the *Bowers* opinion, and are impelled to the view that it is unsound. We feel that the case at bar has some distinguishing characteristics, but must concede that if *Bowers* were sound it would be dispositive of the issue at hand. We are unable to agree with the reasoning advanced in *Bowers* as applied to the factual background of that case. We have no quarrel with the legal principle expressed which limits the assumption of risk doctrine to instances in which a plaintiff voluntarily subjects himself to " * * * a peril that is known to him, or plainly observable by a person of ordinary prudence in his situation." Our difficulty is in perceiving any manner in which Bowers could have exercised even the slightest care for his own safety without his being made acutely aware of the obvious danger.

In the instant case, appellee knew that the bottom of the pool sloped from a five-foot depth to an eight-foot depth as it ranged from the five-foot marker to the eight-foot marker. He knew that he was about half way between the two markers. If the slope was fairly constant, it would mean that the depth at the point of the dive would have been six feet, six inches; it was six feet, three inches. So, appellee cannot be heard to say that he relied on the eight-foot marker which was across the pool from

him, and substantially closer to the diving board than was the point from which he dived.

Although the expert divers for appellee said that a "pike" dive could be done safely in eight feet of water, but not in six feet, three inches, there was no showing that appellee had any such nice appreciation of the distinction. A sharp question arises whether the appellant could be charged with the responsibility of providing a *diving* area so far from the diving board. At least, when a deep or vertical dive is employed, we think the diver must do more than appellee did in order to assure himself that the water's depth will accommodate the dive.[1] Particularly is this true in the case at bar, because the appellee knew that the depth of the pool decreased as it left the diving board area. During the course of his testimony the appellee responded to an inquiry from the trial judge:

"THE COURT: From your experience in swimming pools and diving, as you leave the point where the diving board is and go towards the shallow end, does or not the water gradually get to less depth?

THE PLAINTIFF: Yes, sir."

In these circumstances we conclude that the appellee was as a matter of law guilty of such negligence as to preclude his recovery. To the extent that Louisville Water Company v. Bowers, 251 Ky. 71, 64 S.W.2d 444, may be in conflict with the views expressed herein, it is overruled.

Although we have premised this decision on appellee's contributory negligence, there is much to be said for the proposition that appellee assumed the risk of injuring himself by making a deep dive at a point substantially removed from the diving board. Conversely, it may be doubted that appellant should have foreseen that appellee would make this type dive where he did; thus, grave doubt exists whether appellant

---

1. Appellee disclaimed understanding of a "pike" dive, but said that he dived "straight down."

was proven negligent anyway. To put it another way, it does not seem unreasonable to say that when the proprietor has provided special facilities for diving, consisting of a diving board, there is no invitation for its patrons to dive elsewhere except at their own risk.

The judgment is reversed on the original appeal with directions to enter judgment n. o. v. in behalf of the appellant; the judgment is affirmed on the cross-appeal.