## FRANCES YOUNG *v.* PHYLLIS DIETZEL ET AL.

[No. 676, September Term, 1970.]

*Decided October 19, 1971.*

The cause was argued before THOMPSON, MOYLAN and CARTER, JJ.

*Stanley B. Rohd,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Irving Schwartzman,* with whom was *Donald L. Allewalt* on the brief, for appellees.

MOYLAN, J., delivered the opinion of the Court.

The accident out of which this case arose occurred on December 13, 1967, at about 2:47 p.m. Vehicles driven by the appellant, Frances Young, and one of the appellees, Phyllis Dietzel, collided in the intersection of Oakleigh Road and Taylor Avenue in Baltimore County. The intersection was controlled by a traffic light. The case hinged exclusively upon the resolution of the question of which of the two drivers had the green light.

Mrs. Dietzel testified that she and her son, Michael, had approached the intersection while driving in a northerly direction on Oakleigh Road. Shortly before the collision, they had left a shopping center located approximately one mile from the scene of the accident. They then proceeded toward their home by travelling northward on Oakleigh Road. Mrs. Dietzel testified that while she was still approximately two blocks south of the Taylor Avenue intersection, she observed that the traffic light controlling that intersection was green for vehicles travelling in her direction. She approached the intersection at a speed of between ten and fifteen miles per hour. While still some fifteen feet south of the intersection, she observed the traffic light turn to amber and she applied her brakes. She brought her vehicle to a full stop

before entering the intersection. According to her testimony, she remained in a stopped position for approximately twenty seconds. When the traffic signal turned green for her, she looked to her right and then to her left and observed no approaching traffic on Taylor Avenue. She then resumed her progress northward, proceeding into the intersection. She testified that she had travelled approximately twenty feet northward and had accelerated to a speed of no more than fifteen miles per hour when she heard her son holler, "Mother, watch out, the lady is coming through a red light." At that point, she saw the Young vehicle in front of her, immediately before the impact. She applied her brakes and tried to avoid the collision by turning her car sharply to the right. She then struck the left rear side of the Young vehicle. She testified that Mrs. Young had made no effort to stop—that "she just kept coming, looking straight ahead, without stopping."

Corroborating Mrs. Dietzel's version of the accident was the testimony of Mrs. Carole Dietrick. Mrs. Dietrick testified that she also had been driving her vehicle in a northerly direction on Oakleigh Road. When the light turned red for traffic on Oakleigh Road, she brought her vehicle to a stop immediately behind the stopped Dietzel vehicle. When the light turned green, she observed the Dietzel vehicle resume its northerly progress and she then resumed her own progress in the same direction. She then observed the collision between the Dietzel vehicle and the Young vehicle. Mrs. Dietrick testified that the Young vehicle "ran through the light."

After the initial collision, Mrs. Dietzel lost control of her car and it then collided with a parked truck, owned by a Justin Weinberg, one of the appellees, which was resting on a parking lot immediately to the northwest of the intersection.

Mrs. Young, the appellant, testified that just before the accident she had been proceeding on Taylor Avenue in a westerly direction, from the Maryland School for the Blind toward her home. She testified that she re-

membered travelling along Taylor Avenue and remembered stopping at the intersection of Taylor Avenue and Perring Parkway for a traffic light. She then had a vague recollection of having crossed Perring Parkway and proceeding up a hill, about two blocks east of the Oakleigh Road intersection. She further testified that she did not remember anything that happened after that point until she was aware of "coming to" in her vehicle after the accident. Mrs. Young was taken to the hospital in the same ambulance with Mrs. Dietzel and her son. At the hospital, Mrs. Young required several stitches for a break in the skin. She was conscious during the ride to the hospital and asked one of the attendants how badly her car had been damaged.

Also testifying for the appellant was a taxicab driver, Hiram Bullen. He testified that he had been approaching the intersection of Taylor Avenue and Oakleigh Road in an easterly direction when he observed the collision. He testified that at the time of the collision the color of the traffic light was green for traffic proceeding on Taylor Avenue. He said that he was approximately 200 to 250 feet west of Oakleigh Road when he observed the collision. He also said, however, that he was in the vicinity of Bon Air at the moment when he observed the collision. Bon Air is actually 715 feet west of the intersection.

The jury had submitted to it issues agreed upon by all of the parties. The jury, answering the issues, found that the appellant, Mrs. Young, had entered the intersection in question on a red traffic signal and they assessed damages to be awarded. The trial judge thereupon entered judgments in favor of the plaintiffs.

On appeal, the appellant raises the single contention that the trial judge was in error in refusing to grant the requested instruction that the jury could presume that the appellant was exercising ordinary care for her safety at the time the accident occurred. By the instruction, the appellant sought to utilize the presumption (or inference) of due care as a distinct item of substantive evidence to be added to her side of the scales along with the

testimony of Mr. Bullen in an effort to outweigh the countervailing testimony of the appellee and of Mrs. Dietrick.

It is unnecessary to reach the challenging and complex question of whether the "presumption of due care" is 1) a "presumption of fact" or (preferably) a "permissible inference of fact" with its attendant problems of what quanta of proof on one side of the issue or the other will permit it to be considered by the jury or preclude such consideration, or 2) a true "presumption of law" which is only for the judge and which fixes the burden of producing evidence, or 3) a hybrid presumption-inference which possesses some of the characteristics of both a "presumption of fact" and a "presumption of law." [1] Nor is it necessary to reach the question of whether a mere allegation of loss of memory as to the critical moments leading up to an accident, unsupported by medical evidence to that effect, could ever suffice to invoke the "presumption of due care" which has historically been reserved for the benefit of decedents and which was extended in *Nizer v. Phelps*, 252 Md. 185, for the benefit of an 82-year-old plaintiff who was confined to a nursing home for the rest of her life and was rendered totally disabled and mentally incompetent as a direct result of injuries sustained in the accident there at issue.

In the case at bar, the appellant seeks to invoke the "presumption of due care" on her behalf, as a defendant, and on the issue of primary negligence. In this, she may not prevail.

Maryland has long recognized the doctrine that on the question of contributory negligence the deceased victim will be presumed, in the absence of proof to the contrary, to have been acting with "due care." This pre-

---

1. See *Gresham v. Commissioner of Motor Vehicles*, 256 Md. 500; *Bratton v. Smith*, 256 Md. 695; *Grier v. Rosenberg*, 213 Md. 248; *State of Maryland for the Use of Geils v. Baltimore Transit Company*, 329 F. 2d 738 (4th Cir. 1964) (both majority opinion and dissenting opinion of Haynesworth, J.); *Jennings v. U.S.*, 178 F. Supp. 516 (D. Md. 1959).

164

sumption arises from "the general and known disposition of men to take care of themselves, and to keep out of the way of difficulty and danger." The doctrine was first articulated by Judge Alvey in *Northern Central Railway Company v. State, use of Price*, 29 Md. 420, 438, and was taken from *Johnson v. Hudson River Company*, 20 N. Y. 65. That doctrine has been consistently followed. *Northern Central Railway Company v. State, use of Geis*, 31 Md. 357; *Baltimore & Ohio Railroad Company v. State, use of Hauer*, 60 Md. 449; *Maryland Central Railroad Company v. Neubeur*, 62 Md. 391; *Philadelphia, Wilmington and Baltimore Railroad Company v. Stebbing*, 62 Md. 504; *Tucker v. State, use of Johnson*, 89 Md. 471; *Western Maryland Railroad Company v. State, use of Shirk*, 95 Md. 637; *Baltimore & Ohio Railroad Company v. Stumpf*, 97 Md. 78; *Lozzi v. Pennsylvania Railroad Company*, 152 Md. 508; *State, for the use of Pachmayr v. Baltimore & Ohio Railroad Company*, 157 Md. 256; *Sheriff Motor Company v. State, use of Parker*, 169 Md. 79; *State, use of Chenoweth v. Baltimore Contracting Company*, 177 Md. 1; *Baltimore Transit Company v. State, use of Castranda*, 194 Md. 421; *Gresham v. Commissioner of Motor Vehicles, supra*; *Bratton v. Smith, supra*. As previously mentioned, the Court of Appeals did extend the doctrine in *Nizer v. Phelps, supra,* for the benefit of an 82-year-old accident victim, who was not deceased but who was rendered totally disabled and mentally incompetent as a result of the accident. The doctrine has never been invoked for the benefit of a defendant and has never been applicable to the issue of primary negligence. See *State, use of Chenoweth v. Baltimore Contracting Company, supra,* at 20. We are not persuaded, as urged by the appellant here, to extend the doctrine.

Indeed, the legal literature generally, in looking at the origin of and reason for the doctrine of presumption of due care, confirms that its salutary purpose has utility only for a plaintiff, upon the issue of contributory negligence in a case where the victim is dead or mentally incompetent to testify. In Prosser, *Law of Torts* (4th

Edition, 1971), the purpose of the doctrine is discussed at p. 416:

> "Some few jurisdictions, because of various theories as to the basis of the rule, have held that freedom from such [contributory] negligence is an essential part of the plaintiff's cause of action, as to which he has the burden of proof. This obviously means that where there is no evidence on the issue the plaintiff must lose; and the hardship of this is so apparent in many cases that such jurisdictions have tended to relax the rule, either by aiding the plaintiff by a presumption of his own due care, supposedly based upon the instinct of self-preservation. . . ."

In 29 Am.Jur.2d, *Evidence* § 214, it is said:

> "In those jurisdictions where contributory negligence is an affirmative defense which must be pleaded and proved by the defendant, the law presumes that one has exercised due care for his own safety. This presumption is based on the theory that every man, because of the instinct of self-preservation which is so strong, will exercise due care to prevent injury to himself. It is founded on a law of nature and has for its motive the fear of pain or death. It applies particularly where the injuries have resulted in death. . . ."

The logic of the proposition that the presumption of due care applies only on the issue of contributory negligence speaks for itself. "Negligence as it is commonly understood is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the actor himself. Negligence requires a duty, an obligation of conduct to another person. Contributory negligence involves no duty. . . ." Prosser, *op. cit.*, 418. Since the presumption

of due care is predicated upon "the instinct of self-preservation" and "has for its motive the fear of pain or death," it is highly relevant to the issue of contributory negligence, which involves the actor's protection of himself, but has no relevance to the question of primary negligence, which involves a duty to others.

We hold that the court below acted properly in refusing to give the requested instruction.

*Judgment affirmed.*