MARYLAND SALES & SERVICE CORPORATION
*v.* HENRY HOWELL, ETC.

[No. 74, September Term, 1973.]

*Decided November 23, 1973.*

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*John H. Bolgiano*, with whom were *Howard G. Goldberg* and *Smith, Somerville & Case* on the brief, for appellant.

*David L. Saltzman* and *H. Albert Korn* for appellees.

MOYLAN, J., delivered the opinion of the Court.

At the time of the accident which resulted in the present litigation, Maryland Sales & Service Corporation (appellant) and Roofers, Inc. were both engaged in the construction of a new roof on the Maryland Cup Corporation building in Baltimore County. Both companies had been subcontracted with by Ames-Ennis, the general contractor. The appellant's work consisted mainly of laying a metal roof deck on the building, welding it into place, and then cutting holes in the

roof deck for skylights, ventilators and exhaust fans. After this was done, Roofers, Inc. was to lay insulation on top of the roof deck, apply tar and felt on top of the insulation, and apply a layer of slag on top of the felt.

On July 29, 1965, the metal roof deck had already been installed and the holes had been cut by the appellant. The insulation also had already been laid by Roofers, Inc. On that day, Henry Howell (appellee), an employee of Roofers, Inc., while walking backwards operating a tar and felt spreading machine, fell into one of the holes in the roof cut by the appellant and was severely injured.

Suit was instituted against Maryland Sales & Service Corporation by Henry Howell and his wife, alleging negligence. Employers Insurance Company of Wausau, the Workmen's Compensation carrier for Roofers, Inc., was joined as a use plaintiff.

At the trial of the case, at the conclusion of all the evidence, the court granted the defendant-appellant's motion for a directed verdict on the count in the declaration alleging a loss of consortium. The court reserved ruling on the defendant's motion for a directed verdict as to the claim for personal injuries and submitted the case to the jury. The jury returned a verdict in favor of the plaintiff-appellee. The defendant's motion for judgment N.O.V. was denied.

On appeal, the appellant contends that the evidence was legally insufficient as to negligence on its part and that, in any event, Henry Howell had assumed the risk of his injury or was guilty of contributory negligence as a matter of law.

In reviewing the contentions, we must look at the evidence in the light most favorable to the plaintiff-appellee, assuming the truth of all the evidence tending to sustain their claims of 1) negligence and 2) lack of contributory negligence or assumption of risk and drawing all favorable inferences of fact fairly deducible therefrom. *Thomas v. Corso,* 265 Md. 84, 288 A. 2d 379; *Burns v. Goynes,* 15 Md. App. 293, 290 A. 2d 165.

The appellee Howell testified that he arrived at work on July 29 at approximately 7:30 a.m. and spent the next hour

and a half preparing the material he was going to work with in applying tar and felt on the roof. He filled with tar the three-wheeled tar and felt spreading machine, which automatically dispensed tar and then felt on top of the tar, and set the machine on a line he was supposed to follow in spreading the felt. Since the machine held approximately 110 feet of felt and since it had to be pulled backwards, he looked back to see how far he had to go and saw "a smooth surface of roof . . . just a straight, open, wide space." He "figured it was clear" and "just took off with the machine."

Howell testified that the roof was divided by an expansion joint, that on the previous day he had worked on the other side of the expansion joint, and that he had not worked on this near side of the roof before. He stated that he had previously observed ten or twelve holes in the roof on the other side of the expansion joint and that there was a twelve-inch board around each to indicate its presence, so that the holes were readily visible.[1] "All you had to do was look down the roof . . . and know it was dangerous." He further testified that plywood was also used in the trade to cover up holes such as these or that rope and a post would be used to indicate their presence. The appellee testified that whenever there was a hole in the roof, it was the customary practice for the workman applying tar and felt to come up to between four and six feet of the hole and then to apply the tar and felt with a hand model machine to avoid falling into the hole.

Not seeing any impediment ahead, the appellee testified that he proceeded to operate the machine, walking backwards pulling the machine, and continually looking at the guide on the machine to make sure that the felt was being applied straight on top of the hot tar to avoid any "fish mouths" where water might later accumulate and cause leaking. A fellow employee, Ollie Moore, also known as "Pee Wee" (who was deceased at the time of trial), walked behind the machine and assisted him. After proceeding in such a

---

1. Howell testified that the wooden framing around the holes was installed by carpenters employed by the general contractor.

manner for some 85 or 90 feet, the appellee fell into a hole approximately three and a half feet square.

Albert Harris, the project manager for Ames-Ennis, the general contractor, testified as an expert witness on behalf of the appellees that when he went up on the roof later in the day, he did not notice anything around the hole. He further testified that although the general contractor was responsible for the overall safe conduct of the subcontractors on the job, each subcontractor was required to conduct itself in a safe manner. He stated that the general contractor would have to know of a particular hazard before it could respond to it and that, to his knowledge, Ames-Ennis was not notified about the open and unguarded hole in question. He was permitted to testify that Ames-Ennis should have been notified by the appellant that the hole was being cut [2] and that after the hole was cut, the hole should have been covered up and protected and/or left guarded while Ames-Ennis was being notified. He answered that, from his experience in the building construction industry, it was not the custom and practice to leave unguarded and uncovered holes on roofs.

William P. Hoffman, the foreman for the appellant at the time of the accident, testified as an expert witness in its behalf. He stated that the witness Harris instructed him to have the hole in question cut. He testified that, to his knowledge, the general contractor was always responsible for the safety or covering up of the holes and that the work was usually done by carpenters. He testified that he never covered the holes in the past and that it was his practice to leave them open because he dealt in steel and did not have anything with which to cover them. He admitted, on cross-examination, however, that a length of one of the sheets of steel could have been placed over or around the hole in question. He further testified that the exact location of the holes was marked in the structural frame in the steel

2. On cross-examination, the witness stated he had no knowledge whether a representative of the general contractor instructed the appellant to cut the hole in question and that he could not deny that this specific instruction was given.

deck and that the general contractor did not have to stand around instructing them where each hole was to be cut. He admitted that Ames-Ennis could not know when they had finished cutting the holes.

A subcontractor on a construction job owes a duty to the employees of other contractors similar to the duty owed by an employer to an employee or by the owner of real estate to an invitee on the premises. Although he is not an insurer of their safety, he must exercise due care to provide for the protection and safety of those employees. *Finkelstein v. Vulcan Rail Co.*, 224 Md. 439, 168 A. 2d 393. This includes the duty to warn employees of any unreasonable risk which is either known to the subcontractor or that could have been discovered by reasonable inspection. There is no duty, however, to warn of dangers which are so apparent and obvious that an employee acting as a reasonable man could have discovered them. *LeVonas v. Acme Paper Board Co.*, 184 Md. 16, 40 A. 2d 43. The standard of due care is the standard of the reasonable prudent man. What constitutes due care depends on the circumstances of each case. Courts recognize that the hazards involved on a construction site, for instance, differ from those elsewhere. The subcontractor's duty, therefore, extends only to such conduct as is customary and usual in that trade or profession. *Long Co. v. State Accident Fund*, 156 Md. 639, 144 A. 775; *Joyce v. Flanigan*, 111 Md. 481, 74 A. 818. See generally, 57 C.J.S., *Master and Servant*, § 610.

The question of the appellant's negligence was properly submitted to the jury. From the evidence, the jury could have found that leaving the open, unguarded hole in the roof was not "in accord with good practice in the trade" but was an abnormal and ususual condition which created an unreasonable risk. *Finkelstein v. Vulcan Rail Co., supra; Long C. v. State Accident Fund, supra.* The evidence that the appellant cut a hole in a steel roof deck and left it uncovered and unguarded until carpenters installed wooden curbing, with no warning to other workmen, would support the jury's finding that the appellant did not exercise due care for the protection of other employees.

To relieve itself from primary negligence, the appellant argues that it did not have a duty to warn Henry Howell of the hole in the partially constructed roof because it was an open and obvious condition, which an ordinary prudent man should have discovered. The appellee Howell did testify that he could have seen the hole from a distance of fifteen feet had he stopped his machine and turned around and looked. Albert Harris, the project manager for the general contractor, testified that when he arrived at the construction site at around noon, looking for the hole, he had no trouble finding it. The appellant thus argues that any workman in close proximity to the hole would have readily observed it.

We think, however, that the question of whether the hole in the roof was such an open and obvious condition as would have relieved the appellant of its duty to warn other employees of its presence was an issue for the jury to resolve. The appellee Howell testified that all the other holes on the roof, on the other side of the expansion joint, were "boxed in" and thus readily visible for some distance. He further testified that he "didn't see no boxes or nothing down there" in the roof deck as he turned around and looked back; about 85 feet from the hole, before proceeding to walk backwards pulling the tar and felt spreading machine. Considering Howell's awareness of the presence of other holes in the roof and the manner in which they were made evident, coupled with the lack of any comparable indication of the instant hole from a similar vantage point, the evidence was sufficient for the jury to have found that the hole in question was not such an "obvious danger," equally apparent to both parties, as to impute knowledge of it to the appellee Howell and as to relieve the appellant of liability. *Honolulu Ltd. v. Cain*, 244 Md. 590, 599, 224 A. 2d 433.

A dangerous condition, equally obvious to both defendant and plaintiff, prevents liability by denying the existence of a duty or by creating a defense. "The things that absolve the employer or the owner of land [or the subcontractor] from primary negligence often are the very things, in converse, that cause the employee or invitee to have assumed the risk." *Finkelstein v. Vulcan Rail Co., supra.* Whether or not

a defect was so obvious as to obviate the existence of a duty to warn by the subcontractor bears, in turn, on whether an employee assumed the risk of injury when, with knowledge of an obvious danger, whether actual or imputed, he, nevertheless, voluntarily exposed himself to that risk. See *LeVonas v. Acme Paper Board Co., supra.* See also Keeton, *Injuries Resulting from Open and Obvious Conditions,* 100 U. Pa. L. Rev. 629 (1952).

Having determined that the condition herein was not, as a matter of law, so open and obvious as to relieve the appellant of a duty to warn, we determine, conversely, that the appellee Howell was not charged with knowledge of the danger, as a matter of law. He cannot, therefore, be held to have understood the risk of harm to which he was exposed and to have voluntarily assumed it. "[E]very risk is not necessarily assumed by one who works in a dangerous place or at a dangerous occupation. He assumes only those risks which might reasonably be expected to exist, and, if by some action of the defendant, an unusual danger arises, that is not so assumed." *Bull Steamship Lines v. Fisher,* 196 Md. 519, 77 A. 2d 142. Assumption of risk, furthermore, will be left for the jury to decide in all but the clearest cases. *Miller v. Michalek,* 13 Md. App. 16, 281 A. 2d 117; *Kasten Construction Co. v. Evans,* 260 Md. 536, 273 A. 2d 90. We think that, at the very least, whether the risk of an unguarded and unprotected open hole in this expanse of roof deck was assumed or not was a proper question for the jury.

While the same facts may support a finding of either assumption of risk or contributory negligence, traditionally assumption of risk has been held to involve a matter of knowledge of danger and intelligent acquiescence in it, while contributory negligence has been held to be some sort of departure from the conduct of the reasonable man. Prosser, *Torts,* § 68, p. 441 (4th ed.). *Clayborne v. Mueller,* 266 Md. 30, 291 A. 2d 443. In order to withdraw a case from the jury on the ground of contributory negligence, reasonable minds must not differ that there was some decisive act or omission on the part of the plaintiff which directly contributed to the cause of the accident. *Rooney v. Statewide Plumbing,* 265

Md. 559, 290 A. 2d 496. The distinction between these two defenses, however, is a fine one in Maryland. Maryland applies an objective standard in determining whether a plaintiff had knowledge of a risk. A plaintiff will be charged with knowledge and cannot be said not to have comprehended a risk which should have been obvious to him, whether or not he, in fact, had actual knowledge of it. *Miller v. Michalek, supra,* at 13 Md. App. 25-26, n. 9. The evidence, therefore, that supports the finding that the hole in question was not so obvious as to impute knowledge of it to the appellee Howell and which negates the assumption of risk as a matter of law, supports also the finding that the appellee was not guilty of contributory negligence as a matter of law in failing to discover the hole in question.

*Judgment affirmed; costs to be paid by appellant.*