William T. LEAKAS, et al.

v.

COLUMBIA COUNTRY CLUB, et al.

Civ. A. No. WN–91–1438.

United States District Court, D. Maryland.

July 9, 1993.

Gerson B. Mehlman, Wendy L. Shiff, and Mehlman & Lax, Baltimore, MD, and Louise Bouscaren McKnew, Bethesda, MD, for plaintiffs.

Scott D. Goetsch, Thomas V. McCarron, and Semmes, Bowen & Semmes, Baltimore, MD, for defendants.

## *MEMORANDUM*

NICKERSON, District Judge.

Defendants' Motion for Summary Judgment currently is pending before the Court. Paper No. 42. Plaintiffs have opposed the motion (Paper No. 44), and Defendants have replied. Paper No. 47. Upon a review of the motion and the applicable case law, the Court concludes that no hearing is necessary (Local Rule 105.6), and that Defendants' motion should be granted.

## *BACKGROUND*

This action arises out of a diving accident at the Columbia Country Club ["the Club"] on July 16, 1988. On that date, David Drew Leakas dove into the swimming pool and sustained a spinal cord injury that rendered him a quadriplegic. Two years later, Leakas died in an unrelated automobile accident. His parents are Plaintiffs in the instant case. They seek to recover for their son's injuries, alleging that the Club was negligent in failing to warn, failing to adequately maintain the pool, and failing to properly hire, train, and supervise its lifeguards. In addition, Plaintiffs allege that the Club is liable on a

respondeat superior theory for the negligent acts of its lifeguards. The lifeguards who were on duty on the day in question, Abby Barnett and Kevin Owens, also are named as Defendants. Allegations of negligence and gross negligence have been made against them.

On July 16, 1988, Leakas was working as a caddy at the golf course at the Club. It was a hot and sunny day, so Leakas, his girlfriend Leland Ingham, and Ingham's niece and nephew decided to go to the pool.[1] After entering the pool area, Leakas went to the men's locker room to change his clothes. When he exited the locker room, he was standing on a deck above the pool.

Viewed from the men's locker room, the Club's pool is a rectangular shape with the shallow end on the right and the deeper end on the left. The shallow end is three and a half feet deep, and the deeper end is five feet deep. Depth markers are painted at intervals across both sides of the pool. Lifeguard chairs also have been placed on both sides of the pool slightly to the left of the three and a half foot depth marker. A diving well with a low diving board juts off diagonally from the deeper end. On the day of the accident, the diving well was separated from the rest of the pool by a rope with flotation devices, but the deep and shallow areas of the main portion of the pool were not divided in any way. It is undisputed that Leakas had been to the pool once before during the summer of 1987. On that occasion he dove from the diving board into the diving well, but he did not swim in the main portion of the pool.

On the day of the accident, Leakas walked down several stairs from the deck to the pool level, approached the edge of the pool, and dove into the water. Although Leakas was not running, he walked purposefully or directly down the stairs and toward the edge of the pool. Defendants' Motion, Exhibit 1 at 154; Exhibit 6 at 23 & 25; Exhibit 7 at 37, 40 & 42. When Leakas reached the edge of the pool, he was standing at or immediately next to the three and a half foot depth marker, and slightly to the right of the lifeguard stand occupied by Abby Barnett. Plaintiffs' Opposition, Exhibit 3; Defendants' Motion, Exhibit 3, Attachment A. He paused at most a few seconds before diving into the water. Defendants' Motion, Exhibit 4 at 41; Exhibit 5 at 50–51; Exhibit 6 at 27 & 61. Although the witnesses have somewhat different recollections of how many people were in the pool at that time, at a minimum there were several children standing or playing in the shallow end. Plaintiffs' Opposition, Exhibit 3; Defendants' Motion, Exhibit 5 at 33 & 96; Exhibit 6 at 20.

When he dove, Leakas pushed off toward the water either hands-first or head-first. *Id.*, Exhibit 1 at 101 (arms at side); Exhibit 4 at 41 (hands-first dive); Exhibit 5 at 51 & 54 (head-first dive); Exhibit 7 at 42–43 (hands in front as he propelled himself from the edge of the pool, but by his side as he entered the water); Plaintiffs' Opposition, Exhibit 7 at 42–45 (arms initially at his side, but brought over his head to get momentum as he propelled himself into the water; he entered the water hands first). Witnesses characterized Leakas' dive as one that appeared to be more appropriate for deeper water. Defendants' Motion, Exhibit 6 at 25–26; Exhibit 7 at 44–45.

Leakas struck his head on the bottom of the pool and floated to the surface of the water in a manner that alerted Ingham that something was wrong. She went into the water to assist him. Once it became apparent that Leakas had been injured, Ingham turned him face up and called for the lifeguards to help her. She moved Leakas toward the edge of the pool opposite from the side from which he dove. Leakas was removed from the water, and an ambulance took him to the hospital. At the hospital, Leakas was diagnosed as a quadriplegic.

On the day of the injury, Leakas was twenty-six years old. He was a good, experienced swimmer who enjoyed a number of aquatic sports, including sailing and water

---

1. Leakas, Ingham, and Ingham's niece and nephew entered the pool through the main entrance. At the main entrance was a sign-in desk with a sign indicating that all members and guests were required to register with the Club before entering the pool area. Club rules further required that guests pay an $8.00 admission fee. It is undisputed that Leakas was not a member of the Club on the day in question, that he did not sign in at the pool, and that he did not pay the guest fee.

skiing. Defendants' Motion, Exhibit 1 at 34–35; Exhibit 2 at 57. He had been taught to swim by his father, who testified that he instructed Leakas on appropriate rules for water safety. *Id.*, Exhibit 2 at 58 & 92. In addition, Leakas had been scuba diving on at least three occasions before the accident. *Id.*, Exhibit 2 at 59.

### LEGAL STANDARD

■ Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2552. (citations omitted).

■ If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986)). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, only disputes over those facts that might affect the outcome of

the case under the governing law are considered to be "material." *Id.*

■ Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam).

With these principles in mind, the Court will address the arguments presented by the parties.

### ANALYSIS

Defendants argue that they are entitled to summary judgment because Leakas assumed the risk of injury and because his contributory negligence bars his recovery as a matter of law.[2] Plaintiffs argue that the evidence supports the inference that Leakas was deceived by the placement of the lifeguard chairs into thinking that the water was deep enough for diving. Consequently, according to Plaintiffs, neither contributory negligence nor assumption of the risk can be determined as a matter of law, and the case must be allowed to go to the jury. The Court concludes that this inference, to the extent supported by the record, does not create a jury question. Even viewing the evidence and all reasonable inferences in the light most favorable to Plaintiffs, Leakas was contributorily negligent or assumed the risk as a matter of law.

■ In Maryland, contributory negligence is a complete bar to recovery. *Hooper v. Mougin,* 263 Md. 630, 633, 284 A.2d 236 (1971). To prevail on this defense, Defendants must show that Leakas "perform[ed] or fail[ed] to perform an act which is a proximate cause of the particular injury of which he complains. His conduct is judged by a norm of ordinary care and the failure by a plaintiff to meet this standard constitutes contributory negligence". *Id.* (citations omitted). Contributory negligence occurs when "the injured party was or *should have been* aware of a dangerous situation and then failed to exercise ordinary care to protect

---

**2.** Because the Court finds in Defendants' favor on assumption of the risk and contributory negligence, the Court makes no ruling on the other arguments raised by the parties.

himself." *Id.* at 634, 284 A.2d 236 (emphasis added; citations omitted); *accord Robertson v. Shell Oil Co.,* 34 Md.App. 399, 404–05, 367 A.2d 962 (1977).

 Whether a given plaintiff was contributorily negligent is ordinarily a question of fact reserved for the jury. *Campbell v. Baltimore Gas & Elec. Co.,* 95 Md.App. 86, 93, 619 A.2d 213 (1993). Nevertheless, a court may find contributory negligence as a matter of law when the evidence shows "some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Rooney v. Statewide Plumbing,* 265 Md. 559, 564, 290 A.2d 496 (1972); *accord, Hooper,* 263 Md. at 634, 284 A.2d 236; *Campbell,* 95 Md.App. at 94–95, 619 A.2d 213; *McSlarrow v. Walker,* 56 Md.App. 151, 161, 467 A.2d 196 (1983), *cert. denied,* 299 Md. 137, 472 A.2d 1000 (1984).

One example of this type of conduct is the failure to observe something that a person exercising reasonable care would have seen. In *Campbell,* a worker suffered injuries when a ladder he was extending came into contact with an electrical wire. The Court of Special Appeals upheld the trial judge's entry of Judgment NOV in favor of the defendant. According to the Court of Special Appeals, the plaintiff's failure to inspect the area before extending the ladder constituted contributory negligence as a matter of law:

> Accepting as fact Campbell's testimony that he did not see the particular ... line overhead and thought that it was safe to raise the ladder near the overhead lines that he had earlier observed, there is still no question that had Campbell inspected the area more thoroughly when he first arrived, inspected the area immediately prior to raising the ladder or simply looked straight up when he participated in raising

the ladder, he would have seen the ... line overhead.

*Id.* at 95–96, 619 A.2d 213.

Moreover, under *Campbell,* a plaintiff is not always entitled to rely on assurances of safety from others. "[S]uch assurances do not relieve a person from the duty of caring for his own safety, and a person cannot rely on another's assurances where he is aware of the danger involved or where the danger is obvious enough that an ordinarily prudent person would not so rely." *Id.* at 97, 619 A.2d 213. In *Campbell,* the plaintiff's supervisor had examined the situation and determined that the power lines were not close enough to the house to present a danger. The plaintiff relied on the supervisor's conclusions in extending the ladder. The court determined that the plaintiff still was contributorily negligent as a matter of law because he could and should have recognized the obvious danger of the power lines.

 Assumption of the risk, while a closely related concept, is different from contributory negligence. The defense arises when the plaintiff knows of and appreciates a risk and voluntarily chooses to encounter it. *Hooper,* 263 Md. at 635, 284 A.2d 236. Knowledge and appreciation of the risk are measured by an objective test and can be determined as a matter of law when "any person of normal intelligence in [the plaintiff's] position must have understood the danger". *Id.; accord, Schroyer v. McNeal,* 323 Md. 275, 283–84, 592 A.2d 1119 (1991). In other words, plaintiffs cannot argue that they did not understand the risk when the danger is such that an ordinary person would have known and appreciated it. *Hooper,* 263 Md. at 635, 284 A.2d 236 (citation omitted). Moreover, negligence is not an element of assumption of the risk. If plaintiffs voluntarily undertake risks of which they are aware, or which an ordinarily prudent person would have understood, they have assumed the risk even in the absence of negligence. *Schroyer,* 323 Md. at 282–83, 592 A.2d 1119.[3]

3. Sometimes it is difficult to distinguish between these two defenses. For example, when a decision to encounter a known risk is an unreasonable decision, the plaintiff can be seen both as contributorily negligent and as having assumed the risk. *Schroyer,* 323 Md. at 281, 592 A.2d 1119. By contrast, "[a] plaintiff who proceeds reasonably, and with caution, after voluntarily accepting a risk, not unreasonable in itself, may not be guilty of contributory negligence, but may have assumed the risk." *Id.* at 283, 592 A.2d 1119 (citation omitted). The failure to exercise due care, in the absence of any voluntary deci-

The key issue in this case concerns Leakas' investigation of the depth of the water. The most favorable inference a jury could draw from the evidence is that Leakas conducted an investigation of the water and concluded that the water was deep enough for diving.[4] The Court determines that if Leakas made an inquiry with respect to the depth of the water that did not reveal that the water was too shallow for diving, his inquiry was so inadequate as to constitute contributory negligence or assumption of the risk as a matter of law.

In the context of diving accidents, courts have held plaintiffs to be contributorily negligent by failing to make an appropriate inquiry regarding the depth of the water. "Diving under the most favorable conditions is fraught with many dangers, and a diver is required to make some inquiry or investigation to determine the safety of diving before doing so." *Chauvin v. Atlas Insurance Co.*, 166 So.2d 581, 584 (La.Ct.App.1964). In *Chauvin*, the plaintiff entered a pool for the first time by diving from the diving board into the water. He struck his head on the bottom and was severely injured. The court denied recovery. Although the existence of a diving board was deemed to be essentially an invitation to dive, plaintiff was not relieved "of the duty to make this inquiry [as to the safety of diving] when diving for the first time into an unfamiliar pool." *Id.*

In *Murphy v. D'Youville Condominium Association, Inc.*, 175 Ga.App. 156, 333 S.E.2d 1, 2 (1985), the court rejected the plaintiff's argument that a factual dispute regarding the actual depth of the water prevented summary judgment on the issue of contributory negligence. "[E]ven if the water level had been low, '[a]ppellant ... was under a duty to use ... his sight to discover any defects or dangers.'" *Id.* (citation omitted). The plaintiff was not permitted to recover because "by the exercise of very slight care [appellant] could have avoided the injury." *Id.* at 3; *see also La Croix v. State*, 477 So.2d 1246, 1251 (La.Ct.App.) (holding in dicta that plaintiff was contributorily negligent by diving into a murky, shallow pool without first determining that it was suitably deep for diving); *writ denied*, 478 So.2d 1237 (La. 1985).

Assumption of the risk may also apply in this situation if a person of ordinary intelligence would have understood that the water was too shallow to dive. *See, e.g., Sonnier v. Dupin*, 416 So.2d 1371, 1375 (La.Ct.App.) (sixteen-year-old boy of average intelligence and judgment who had been taught appropriate rules for water safety must have known of the shallowness of the water into which he dove and appreciated the risks of his behavior; thus, plaintiff assumed the risk and was contributorily negligent), *writ denied*, 420 So.2d 984 (La.1982); *Griebler v. Doughboy Recreational, Inc.*, 160 Wis.2d 547, 466 N.W.2d 897, 899 (1991) (plaintiff "confronted an open and obvious danger as a matter of

---

sion to encounter a known risk, is contributory negligence but not assumption of the risk.

4. Two other inferences also are supported by the record. One reasonable interpretation of the evidence is that Leakas walked directly to the edge of the pool and dove in without conducting any investigation into the depth of the water. Voluntarily encountering the danger of diving into water of unknown depth would constitute assumption of the risk as a matter of law because an individual of ordinary intelligence in Leakas' position would have known and appreciated the danger of engaging in such behavior. This also would qualify as contributory negligence as a matter of law. His decision to assume the risk of diving into water of unknown depth was itself unreasonable, such that accepting that risk was contributorily negligent. Moreover, as discussed more thoroughly in the main text, Leakas had a duty to determine the depth of the water before diving. Thus, his failure to exercise due care for his own safety under the circumstances was contributory negligence.

A second permissible inference is that Leakas conducted an inquiry, determined that the water was shallow, and elected to dive anyway. If Leakas elected to dive, notwithstanding the shallowness of the water, he assumed the risk by voluntarily encountering the danger. As a twenty-six year old, experienced swimmer, he was charged with knowledge and appreciation of the risk of diving into shallow water because any person of normal intelligence in Leakas' position must have understood the danger.

These inferences are not favorable to Plaintiffs because Defendants would be entitled to summary judgment in either case. Accordingly, the Court will focus its discussion on the one permissible inference that arguably supports Plaintiffs' case.

law when he voluntarily dove headfirst into water of unknown depth.").

Although the presence of a diving board does not eliminate the need for appropriate inquiry, courts have held that diving from a location other than a diving board can constitute assumption of the risk or contributory negligence. For example, in *Kalm, Inc. v. Hawley*, 406 S.W.2d 394 (Ky.1966), the plaintiff dove from the side of the pool instead of from the diving board. The court determined that the plaintiff was contributorily negligent, even though he had seen other people diving from the edge of the pool without incident. The court also reasoned that the plaintiff may have assumed the risk as well. "[I]t does not seem unreasonable to say that when the proprietor has provided special facilities for diving, consisting of a diving board, there is no invitation for its patrons to dive elsewhere except at their own risk." *Id.* at 398.

In this case, when Leakas executed his dive, he was at or near a three and a half foot depth marker, and children were standing or playing in the water nearby. The water was observably shallow. Thus, if Leakas did not ascertain the shallowness of the water after conducting an inquiry, the inquiry was so deficient as to constitute contributory negligence as a matter of law. Plaintiffs argue that there is no evidence that Leakas saw the depth marker. Whether or not Leakas actually saw the marker is not a material fact. Leakas *should have seen* the marker if he conducted even a minimally sufficient investigation of the situation. Therefore, if the Court assumes that some inquiry was actually made, the inquiry was insufficient as a matter of law. *See Campbell*, 95 Md.App. at 95–96, 619 A.2d 213 (failure to see what should have been seen upon proper investigation constitutes contributory negligence).[5]

Alternatively, Leakas assumed the risk as a matter of law. He was a good, experienced swimmer familiar with the rules of water safety. He regularly engaged in aquatic sports. Moreover, the Club provided a diving board and a suitably deep diving well for patrons who wished to dive into the pool. Leakas himself had used the diving board the previous summer. A person of ordinary intelligence in Leakas' position would have known of the shallowness of the water and appreciated the risk of diving. *See Sonnier*, 416 So.2d at 1375. An ordinary person additionally would have known and appreciated the danger of executing a dive from a location not designated for diving. *Kalm*, 406 S.W.2d at 398. Accordingly, Leakas' actions also constitute assumption of the risk as a matter of law.

Plaintiffs argue that summary judgment is inappropriate for three reasons. First, Plaintiffs attempt to distinguish the cases cited by Defendants, and cite to additional authority, to show that factual disputes preclude summary judgment. Second, Plaintiffs argue that Leakas, as a deceased plaintiff, is presumed to have acted with due care, thus preventing a finding of contributory negligence as a matter of law. Third, Plaintiffs rely on expert testimony, which they contend creates a factual dispute regarding the adequacy of any inquiry by Leakas prior to his dive. None of these arguments persuades the Court.

Plaintiffs attempt unsuccessfully to distinguish the cases cited by Defendants from the instant case on the ground that several of them involved situations in which the plaintiffs had actual knowledge of the depth of the water into which they dove. *See, e.g., Kalm*, 406 S.W.2d at 397; *Murphy*, 333 S.E.2d at 2. Not all of the cases upon which Defendants rely, however, involved plaintiffs who had such familiarity. *See, e.g., Chauvin*, 166 So.2d at 584; *Griebler*, 466 N.W.2d at 899.

When read together, these cases merely illustrate that whether a given plaintiff exercised the appropriate level of care or assumed the risk will turn on the specific facts of each case. As Plaintiffs themselves acknowledge, "[t]here is no exact test for determining with respect to the question of contributory negligence whether a dangerous condition is so obvious that a person of ordinary prudence could see it and appreciate its

---

5. Conversely, if Leakas saw the marker and dove anyway, he assumed the risk as a matter of law. *See supra* note 4.

danger and thus avoid it. The facts of the individual case are controlling." *Robertson,* 34 Md.App. at 408–09, 367 A.2d 962; Plaintiffs' Opposition at 11. The distinguishing facts that Plaintiffs point out among the cases do not establish the proposition that actual knowledge of the water's depth is a prerequisite to finding contributory negligence or assumption of the risk as a matter of law. Thus, they do not compel a different result in this case.[6]

Plaintiffs also attempt to rely on Maryland precedent regarding contributory negligence in support of their position that factual disputes prevent entry of judgment in favor of Defendants. For example, in *Maryland Sales & Service Corp. v. Howell,* 19 Md.App. 352, 311 A.2d 432 (1973), the plaintiff was injured when he stepped into an unguarded hole at a roofing site. The court held that contributory negligence could not be determined as a matter of law. In that case, several holes had been made in the roof for skylights, ventilators and exhaust fans. The holes were covered or flagged, with the exception of one hole that was unmarked and unprotected due to the defendant's negligence. The evidence showed that the plaintiff actually conducted an inquiry to determine if there were any holes in his path. Based on the manner in which the defendant covered or marked the other holes in the roof, however, the court found that the question of whether an adequate inquiry would have revealed the existence of the unprotected hole was appropriately left for the jury. In this case, if Leakas conducted any inquiry at all, it was insufficient as a matter of law because an appropriate investigation should have revealed the shallowness of the water. Thus, *Howell* does not preclude entry of judgment in favor of Defendants under the facts of this case.

Plaintiffs' second argument is that a deceased plaintiff is presumed to have acted with due care unless there is proof to the contrary, and that therefore the Court cannot find contributory negligence as a matter of law in this case. *Young v. Dietzel,* 13 Md.App. 159, 163, 282 A.2d 150 (1971). This argument lacks merit because the presumption does not apply in this case. The rule applies to a plaintiff who dies as a result of the defendant's alleged negligence, presumably because it is impossible for the deceased person to testify on his or her behalf to establish the absence of contributory negligence. The contrary rule would lead to anomalous results. Negligent defendants whose actions lead only to injury would be held liable because the plaintiff could testify as to his or her due care, but a defendant whose actions lead to death would escape liability on the ground that the plaintiff could not establish the absence of contributory negligence. In light of this purpose, it is clear that the rule cannot be invoked for the benefit of a plaintiff who dies for reasons unrelated to the alleged negligence. This is particularly true in the instant case because Leakas could have brought this action and been deposed at any time during the two years after the accident and prior to his death. Moreover, even assuming that the rule applies, Defendants have made a sufficient showing to rebut the presumption.

---

**6.** In further support of their position, Plaintiffs cite *George v. Brandychase Limited Partnership,* 841 F.2d 1094 (11th Cir.1988) (applying Georgia law). The court in *George* held that contributory negligence and assumption of the risk were jury questions because of a factual dispute concerning plaintiff's familiarity with the pool. Similarly, Plaintiffs contend that Leakas' familiarity with the Club's pool is a disputed fact. This Court is not persuaded by *George* for three reasons.

First, the Georgia state courts have held the *George* decision to be instructive only and have not been bound by its reasoning. *See Plantation at Lenox Unit Owners' Assoc., Inc. v. Lee,* 196 Ga.App. 420, 395 S.E.2d 817 (1990).

Second, Leakas' familiarity with the pool is not a material fact in this case. Either he was famil-

iar with the pool, in which case he is charged with knowledge that the area in which he dove was too shallow, or he was unfamiliar with the pool, in which case his failure to conduct an adequate inquiry renders him contributorily negligent.

Third, in *George,* there was a factual dispute regarding whether an appropriate inquiry would have revealed the shallowness of the water because the lighting was poor and the posted warnings were obscured. In this case, reasonable minds could not differ regarding the conclusion that an adequate examination by Leakas would have revealed that the water was too shallow for diving.

Plaintiffs' final attempt to create a factual dispute relies on the expert testimony of Ralph L. Johnson, Ph.D. According to Plaintiffs, one reasonable inference from Johnson's testimony is that Leakas made an adequate inquiry but erroneously concluded that the water was deep enough to dive in. Thus, Plaintiffs argue, the jury must be allowed to decide if Leakas' actions constituted a mere error in judgment, rather than contributory negligence or assumption of the risk. *See McSlarrow,* 56 Md.App. at 161, 467 A.2d 196 (errors in judgment do not necessarily constitute contributory negligence).

According to Johnson, there were no rules posted and no warnings against diving in shallow water. He also maintains that the layout of the Club's pool was deceptive because of the location of the lifeguard chairs. Specifically, Johnson opined that one would expect a lifeguard chair to be placed closer to the deep end of the pool because lifeguards may have to dive into the water to rescue a swimmer and because it would take too much time to climb down from the chair to get into the water. Therefore, in Johnson's opinion, "perhaps Mr. Leakas was deceived into diving into what he thought was deeper water." Plaintiffs' Opposition, Exhibit 9 at 130.[7]

 Even accepting Johnson's opinion that the placement of the lifeguard chairs created a deceptive situation, this is insufficient to save Plaintiffs' claims from summary judgment. Johnson has no basis for his opinion that Leakas was, in fact, deceived by the placement of the chairs. As the Maryland Court of Appeals has explained, " '[i]n matters of proof, neither the courts nor the juries are justified in inferring from mere possibilities the existence of facts, and they cannot make mere conjecture or speculation the foundation of their verdicts.' " *Davidson v. Miller,* 276 Md. 54, 61, 344 A.2d 422 (1974) (quoting *Ager v. Baltimore Transit Co.,* 213 Md. 414, 421, 132 A.2d 469 (1957)). Ordinarily, an expert's opinion must be based on "the posture of reasonable probability," even if

the act in question did not or will not occur with absolute certainty. *Id.* In this case, Johnson could not offer an opinion with any degree of certainty as to what actually occurred. He states merely, "I think that perhaps Mr. Leakas was deceived". Plaintiffs' Opposition, Exhibit 9 at 130. This unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty,* 818 F.2d at 1128 (citation omitted); *see also Hooper,* 263 Md. at 634, 284 A.2d 236 (upholding trial court's instruction that the plaintiff was not contributorily negligent as a matter of law because "we discern nothing beyond a mere scintilla of evidence, amounting at most to conjecture, that could lead reasonable minds to differ about this result.").

Second, even accepting that Leakas did, in fact, make an inquiry and was, in fact, deceived by the placement of the chairs, this does not create a factual dispute regarding the reasonableness of his actions. Despite the fact that the lifeguard chairs were not placed next to the deepest portion of the pool, there were children standing or playing in the water nearby. He was standing at or near a three and one half foot depth marker. The water was observably shallow. At most, these contradictory visual cues required Leakas to engage in a more thorough examination of the depth of the water before executing his dive. As in the *Campbell* case, the failure to observe that which would have been obvious to an individual conducting an appropriate inquiry constitutes contributory negligence. At a minimum, Leakas should have realized that it was unclear from the situation whether or not the water was deep enough for diving.

 *Campbell* also stands for the proposition that assurances of safety do not abrogate a plaintiff's responsibility to act with due care. In this case, even assuming that Leakas viewed the placement of the lifeguard chairs as an indication that the water was deep enough to dive, he was not entitled to

---

7. Plaintiffs also argue that the fact that no ropes separated the shallow end from the deeper end of the main pool area creates a factual dispute regarding whether Leakas was deceived by the appearance of the pool. Johnson makes no reference to this in his deposition, however, and

Plaintiffs provide no citation to the record to support their position. Accordingly, the Court places no weight on Plaintiffs' unsupported contention that Leakas was deceived because the pool was not divided by ropes.

rely on that assumption. It was incumbent on him to take care for his own safety and determine the depth of the water because an ordinarily prudent person would recognize the obvious danger of diving into shallow water and because an ordinarily prudent person would not have relied on such an assurance in light of the other circumstances cautioning against diving in that area. Thus, if Leakas conducted a thorough examination, his failure to recognize and heed the warnings of the contradictory visual cues was contributory negligence, not a mere error in judgment.[8]

## CONCLUSION

For the reasons stated above, the Court finds that Leakas was either contributorily negligent or assumed the risk of his injuries as a matter of law. Accordingly, Defendants' motion must be granted. A separate Order will issue.

## ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 9th day of July, 1993, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment is GRANTED;

2. That judgment BE, and same hereby IS GRANTED in favor of Defendants and against Plaintiffs.

---

8. Johnson's later testimony further supports this conclusion. He stated that there are no standards in the industry for the minimum depth of water next to which lifeguard chairs should be placed. He further stated that the Club did not fail to meet the applicable standard of care regarding the placement of the chairs at the pool in this case. Plaintiffs' Opposition, Exhibit 9 at 131. Accordingly, any assumptions Leakas may have made about the water's depth based on the location of the chairs were unreasonable and constitute contributory negligence as a matter of law.