CLAYBORNE *v.* MUELLER ET UX.

[*No. 383, September Term, 1971.*]

*Decided June 9, 1972.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and ROBERT E. CLAPP, JR., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Hamilton O'Dunne,* with whom was *Patrick A. O'Doherty* on the brief, for appellant.

*Leonard Passano Baker, Jr.,* with whom was *Marvin Ellin* on the brief, for appellees.

CLAPP, J., delivered the opinion of the Court.

In this case appellee, Joseph R. Mueller, Jr., recovered a judgment against appellant in the amount of $3,500.00 for personal injuries arising out of an automobile accident on Liberty Heights Avenue in Baltimore City. The judgment of the trial court was affirmed by the Court of Special Appeals in *Clayborne v. Mueller,* 13 Md. App. 530, 284 A. 2d 24 (1971). This Court granted a writ of certiorari to the Court of Special Appeals on February 15, 1972, because it was claimed that a review by this Court,

> "is desirable in the public interest to determine whether or not under any and all circumstances a policeman cannot be found guilty of

contributory negligence as a matter of law regardless of his full knowledge of the risk and his failure to take precautions to avoid it when the taking of precautions is completely consistent with the duty which he was exercising.

"A review is also desirable because of a conflict in the decision below affirming the charge of the lower court that the case was not a pedestrian case despite the fact that the policeman involved was on foot and despite the fact that the Court of Special Appeals subsequently flatly held that a policeman was a pedestrian. [*Braswell v. Burrus,* 13 Md. App. 513, 284 A. 2d 41 (1971)]."

The appellant presented to the Court of Special Appeals the following issues:

"1. Can reasonable minds differ that it constitutes negligence for an individual to stand in the night, in the dark, in dark clothes, in a lane of traffic, on a heavily travelled street without looking for on-coming traffic when there was no necessity for so doing?

"Stated another way, the question is was the Court below in error in refusing to grant the Defendant's prayer that the Plaintiff was guilty of contributory negligence as a matter of law?

"2. A second question presents itself as to whether or not the Court below erred in instructing the jury that the matter before it did not involve a 'pedestrian' case."

Although not mentioned above, the appellant also argued to the Court of Special Appeals that the plaintiff had assumed the risk of his own actions.

In this Court the issues are not presented in such dramatic terms and, as stated in appellant's brief, are as follows:

"I. Inasmuch as the Plaintiff (Appellee) was

on foot in the traveled highway between inter-
sections, did the Trial Court err in instructing
the jury that the matter before it did not in-
volve a 'pedestrian' case?

"II. Was the Plaintiff (Appellee) guilty of
contributory negligence as a matter of law?

"III. Did the Plaintiff (Appellee) assume the
risk which materialized?"

We shall first deal with points 2 and 3 as argued by
the appellant and then with the question of the com-
plained of instruction, after first stating the facts, bear-
ing in mind the rule that in deciding whether or not a
motion for a Directed Verdict based upon an allegation
of contributory negligence should be granted as a matter
of law, the evidence and all reasonable inferences to be
drawn from it must be considered in the light most
favorable to the plaintiff, *Reid v. Pegg,* 256 Md. 289, 290,
260 A. 2d 38 (1969) ; *P. Flanigan & Sons v. Childs,* 251
Md. 646, 653, 248 A. 2d 473 (1967), and cases there cited.

## THE FACTS

On Sunday night, March 29, 1970, the appellee and
another police officer were in a cruiser in a service sta-
tion adjacent to Liberty Heights Avenue in Baltimore
City. They observed an automobile going east on that
avenue that was apparently exceeding the speed limit
and had, from the sound of it, an inadequate muffler.
They began pursuit and were able to bring it to a halt
after traveling several blocks, by shining the police
cruiser spotlight into the rear window. He parked his
vehicle with the right wheels about six inches north of
the south curb line of Liberty Heights Avenue and the
appellee parked the cruiser about four to six feet behind
it and, also, about six inches from the south curb line.
The police cruiser was approximately six feet in width
while the automobile of the motorist was a compact about
five feet wide.

At that time and during the subsequent events, the

flashing dome light, the tail lights, headlights and the left hand directional signals of the cruiser were operating. The appellee left the cruiser by the left door with his fellow officer in the right front seat and went to the left side of the stopped vehicle where he obtained the motorist's operator's permit and registration card. At that time he told the motorist that, while he apparently had been exceeding the speed limit, he was going to give him only a "repair order" for the defective muffler. Thereupon, he returned to the police cruiser to check the registration with the tags and to write up the repair order. He then returned to the motorist, handed him his permit, registration card and the repair order and turned toward the west to return to his cruiser. At that time he stated that he could have been fifteen inches north of the left side of the halted vehicle when the motorist asked him a question and he turned to answer him. Just prior to the turn he could see two blocks to the west but saw no traffic eastbound on Liberty Heights Avenue. It took about a minute for him to answer the motorist's question during which time through peripheral vision, he was aware of approaching headlights. As he turned again toward the police cruiser he saw appellant's automobile approximately at the rear of the cruiser proceeding in the eastbound lane of Liberty Heights Avenue nearest the parked cars. At that time the appellee was "right up against Mr. Brown's car" and he started running east toward the front and attempted to throw himself on the hood, but was unsuccessful. The vehicle of the appellant struck him causing the injuries complained of.

At the point where the accident occurred Liberty Heights Avenue runs generally east and west and is fifty feet wide. It is divided by a center line with two lanes on each side, each lane adjacent to the center line being ten feet wide. The curb lane is fifteen feet wide but with cars parked adjacent to the curb there is still room for two eastbound lanes of traffic.

At the time of the accident the appellee was dressed in the customary dark blue uniform of the police department

but while at the vehicle of the halted motorist, he was illumined by the headlights of the police car. However, the appellant neither saw him nor the flashing signals on the cruiser. Traffic on the avenue was light at the time because it was a Sunday evening and with the appellee standing where he was there was room for other vehicles to go east on Liberty Heights Avenue two abreast without striking him. The appellee did not do anything that evening that differed from his training by the police department and did not consider it dangerous to stand as he was standing on Liberty Heights Avenue at the time.

The trial court (Joseph L. Carter, J.), under instructions, a portion of which will be later discussed, submitted the issue of the negligence of the defendant and the contributory negligence of the plaintiff to the jury which returned a verdict in favor of the plaintiff, thus finding the defendant guilty of negligence and the plaintiff free of contributory negligence. No issue was raised in this Court nor in the Court of Special Appeals as to the sufficiency of the evidence to warrant a finding of negligence and we are here involved only with the question of whether the plaintiff was guilty of contributory negligence as a matter of law or assumed the risk of injury and whether the instructions of Judge Carter as excepted to were proper.

## CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF RISK

The opinion of the Court of Special Appeals quoted this Court in *Lindenberg v. Needles*, 203 Md. 8, 14, 97 A. 2d 901:

> "* * * It is constantly reiterated in the books that contributory negligence cannot be found as a matter of law, unless the evidence permits of but one interpretation which shows some prominent and decisive act in regard to which there is no room for ordinary minds to differ. *Beck v.*

*Baltimore Transit Co.,* 190 Md. 506, 58 A. 2d 909; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517; *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 51 A. 2d 292.

\* \* \*

"In the absence of the prominent and decisive act which constitutes contributory negligence as a matter of law, the question as to such negligence is for the jury. The burden of proving contributory negligence is on the defendant. *Klein v. Dougherty,* [200 Md. 22, 87 A. 2d 821] and *Goldman v. Johnson Motor Lines,* [192 Md. 24, 63 A. 2d 622] \* \* \*."

The Court of Special Appeals then applied this rule by stating, "[e]vidence showing the presence of a police officer in the street, in the performance of his duties, standing beside a vehicle, or in close proximity thereto, that was stopped in front of a police vehicle upon which the dome lights, headlights and left turn signal were apparently functioning, does not constitute contributory negligence as a matter of law." The appellant here complains that that court failed to concern itself with negligent conduct on the part of the appellee, "proven conclusively on his own testimony," claiming:

(1) That the officer 'knew he was standing in the eastbound lane.'

Appellant does not mention, however, the testimony that he was standing close to the left side of the vehicle of the stopped motorist in the full headlights of the police car.

(2) "That the car which struck him was roughly thirty feet away when he first saw it and in its proper lane of traffic and going at a moderate rate of speed."

Under this contention appellant further maintains that the officer was only watching traffic movement out of the corner of his eye and only saw headlights or the reflection of headlights in his peripheral vision. Here again,

appellant omits referring to the fact that the jury could have found that the officer was next to the vehicle of the stopped motorist and that the police cruiser to the rear extended possibly a foot to the north of the automobile of the stopped motorist because of its greater width, and thus, that he was at a reasonably safe place where he was not required to watch continuously for traffic.

(3) In summation, appellant contends that the appellee's "entire testimony is completely devoid of any suggestion that he took any precautions to detect approaching traffic" and that the Court of Special Appeals made no reference to these selected portions of testimony but stated merely, "that there were controverted material facts."

Even assuming, as appellant contends, that the material facts bearing on the question of contributory negligence were uncontroverted, the recital of all of the facts makes it obvious that the inferences fairly deducible from those facts were controverted in the trial court as they are here.

It is not necessary to describe police officers acting pursuant to their duties as having a "special status". They, like all other persons, must act reasonably under all of the circumstances and the fact that they are police officers acting pursuant to their duties is one of those circumstances. See *Rosenthal v. Durkin,* 142 Md. 18, 119 A. 685 (1922), where under the facts and circumstances of that case the question of contributory negligence of a police officer was held to have been properly submitted to a jury. Compare this case with *Sudbrook v. State,* 153 Md. 194, 138 A. 12 (1927), where a police officer because of his imprudent speed and other reckless conduct was found to have been contributorily negligent as a matter of law. And compare that ruling with *Martin v. Rossignol,* 226 Md. 363, 174 A. 2d 149 (1961), in which a police officer pursuing a traffic violator at a speed of 100 m.p.h.,

was held not guilty of contributory negligence as a matter of law when a sudden unsignaled turn by the pursued forced him to collide with the pursued vehicle.

From what has been here said it is obvious that we hold that under the facts and circumstances of this case the question of the contributory negligence of the appellee was properly submitted to the jury.

This ruling also disposes of the contention of assumption of risk. As Judge Digges pointed out in *Hooper v. Mougin,* 263 Md. 630 at page 633, 284 A. 2d 236 (1971):

> "The distinction between these two tort concepts is slight, often difficult to pinpoint and usually of little practical significance; however, this Court has recognized that some legal difference exists. To be contributorily negligent, a plaintiff must either perform or fail to perform an act which is a proximate cause of the particular injury of which he complains. His conduct is judged by a norm of ordinary care and the failure by a plaintiff to meet this standard constitutes contributory negligence barring his recovery. *Christ v. Wempe,* 219 Md. 627, 150 A. 2d 918 (1959); *Potts v. Armour & Co.,* 183 Md. 483, 490, 39 A. 2d 552 (1944); *Warner v. Markoe,* 171 Md. 351, 189 A. 260 (1937). On the other hand, a plaintiff is said to have assumed the risk of injury when, with full knowledge and understanding of an obvious danger, he voluntarily abandons his right to complain by exposing himself to that particular risk. *Kasten Constr. Co. v. Evans,* 260 Md. 536, 544, 273 A. 2d 90 (1971); *Gibson v. Beaver,* 245 Md. 418, 421, 226 A. 2d 273 (1967); *Bull Steamship Lines v. Fisher,* 196 Md. 519, 525-26, 77 A. 2d 142 (1950)."

In view of the appellee's testimony that he was following usual police procedure, there can be no basis for

a claim that he, as a matter of law, voluntarily assumed the risk of an obvious danger.[1]

## JURY INSTRUCTIONS

In the opinion of the Court of Special Appeals on this point, Judge Gilbert speaking for the Court of Special Appeals, stated:

"In the course of the trial judge's charge to the jury he said:

" '* * * As I said, this is not strictly a pedestrian case. But I know you have heard those instructions given, or I think you have, and I mentioned pedestrian situations as a background.

* * *

" '* * * The Officer, of course, must keep a reasonable lookout for traffic and accommodate himself to the movement of the traffic under the circumstances and he may not just ignore it. Likewise the motorist must be vigilant also as to the traffic in the street in front of him. I suppose, as far as the pedestrian is concerned, in the average case at least, as distinguished from a police officer, his main objective is his own safety. The police officer, of course, is in the performance of his duty. In that connection, safety is not always the sole factor. The police officer must exercise reasonable care to preserve his safety and, as I said before, [the] traveling public must be equally diligent and exercise reasonable care to avoid injury to him or endangering his life and limb. In other words, I think you can boil it down to this: A police officer's legal duty is to keep a reasonable lookout and to exercise care in the circumstances

---

1. We have discussed the question of assumption of risk because the Court of Special Appeals has done so. However, this issue was not raised before the trial court nor was it a stated issue before the Court of Special Appeals. See Maryland Rule 885.

commensurate with the dangers and consistent with his faithful performance of the duties of his employment as a police officer.'

"We have meticulously reviewed the jury charge and find no error."

The trial judge had previously stated to the jury,

"Now, members of the Jury, some of you have heard me, I think, in other cases refer to the respective rights of pedestrians and motorists to the use of the streets. Really their rights are reciprocal, but there are certain basic rules, regulations, that are applicable. I am going to refer to pedestrians first. This is not strictly a pedestrian case. It is not a pedestrian case really. But with respect to pedestrians at intersections, the pedestrian has the right of way within the intersection. Between intersections the motorist has the right of way. Of course, neither can blindly disregard the other party. The pedestrian cannot blindly walk out into an intersection with traffic coming against him and say, 'I have the right of way and, under all the circumstances, I'm going to take it, and you, Mr. Motorist, must stop.' The motorists, by the same token, can't blindly run down the street and say, regardless of what the situation is, 'I have the right of way and I'm going through.' But we do have regulations. We must have rules and regulations. The violation of such a rule does not create a liability unless the violation of the rule is the proximate cause of the accident."

With the above instructions and the statement of the Court of Special Appeals, we agree. This was not strictly a pedestrian case because it was not "a situation where the pedestrian was disputing a motorist's right-of-way; * * *". *Boyd, Admr. v. Simpler,* 222 Md. 126, 158 A. 2d 666 (1959).

The instructions of the trial court to the jury must

be read as a whole and it is not permissible to take isolated portions which may contain inartistic methods of expression, when the charge, considered as a whole, fairly presents the case to the jury on issues presented by the evidence in the case. *Jones v. Federal Paper Board Co.,* 252 Md. 475, 250 A. 2d 653 (1968).

The claimed error that the instructions of the trial court "completely eliminated the effect of the statute, that is, deprived the appellant of his statutory right of way as against pedestrians between intersections in towns and cities",[2] is without foundation. Such contention presupposes that this statutory right of way applied to give the appellant a right of way over a police officer standing adjacent to a parked car in the full illumination of the headlights of his police cruiser upon which the flashing dome signal and the left directional signals were operating.

Judge Carter fully instructed the jury on the reciprocal rights and duties of the police officer and the motorist under the facts of this case. This was not a "pedestrian case" in the sense that an experienced juror might have understood it and it was for this reason, obviously, that Judge Carter included the statement complained of.

Accordingly, we hold that the appellee was not guilty of contributory negligence as a matter of law, that he did not assume the risk of his injury and that there was no error in the jury instructions complained of.

*Judgment affirmed.*
*Appellant to pay the costs.*

---

2. Section 236 (a) of Art. 66½ of the Code (1957, 1969 Repl. Vol.), the Section in effect at the time of the accident.