619 A.2d 213

**Robert B. CAMPBELL, Jr.**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY.**

**William SIEGLEIN**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY.**

No. 732, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Feb. 1, 1993.

88

---

H. Thomas Howell (William F. Gately and Howell, Gately, Whitney & Carter, on the brief), Towson, for appellant, Campbell.

Donald F. Rogers, Baltimore, for appellant, Sieglein.

Laurie R. Bortz and Stephen J. Rosasco, Baltimore, for appellee.

Argued before GARRITY, BLOOM and DAVIS, JJ.

GARRITY, Judge.

This case arises out of an accidental contact between an aluminum ladder being raised by appellant and an overhead electrical line operated by BG & E. Following a jury verdict in favor of appellant, the trial judge granted BG & E's Motion for Judgment NOV, ruling that appellant was barred from recovering because he had been contributorily negligent as a matter of law.

## BACKGROUND

On the morning of April 7, 1986, William Sieglein, Mark Jenkins, and Robert B. Campbell, Jr., respectively owner, foreman, and employee of Sieglein Roofing and Siding Co., Inc. (S.R.S.C.), arrived at a residential property in Baltimore County, Maryland, where they were to install aluminum siding. After arriving at the site, Sieglein walked around the house with Jenkins, explaining what work was required. Campbell, meanwhile, unloaded materials from the company truck. Sieglein thereafter left the premises without discussing the work with Campbell and without saying anything regarding the overhead electrical wires near the house.[1]

Sieglein testified that in advance of siding work he usually visited the job site in order to prepare an estimate and determine whether any overhead utility wires, most typically a 110–volt "service drop" line connecting the electrical system of a house to the utility's high voltage lines, needed to be moved before commencing work. There was evidence

---

[1]. The summary of facts and evidence reflects the fact that in considering this appeal we must examine the facts and all reasonable inferences based on the facts in a light most favorable to appellant. *Franklin v. Gupta,* 81 Md.App. 345, 567 A.2d 524 (1990).

that it was standard procedure for Sieglein to contact BG & E to move an overhead line dangerously close to a work site.[2]

The layout of overhead electrical wires at the subject job site on the day of the accident consisted of five overhead electrical lines grouped together approximately 9½ feet from the east side of the house and two to three feet beyond a chain link fence marking the boundary of the property. In addition, there was a single line that was several feet higher than the group of lines and ran slightly diagonal to these other lines.[3] This line was closer to the house but still beyond the fence marking the boundary of the property. All of the wires were in plain view on a clear day.

After viewing the overhead lines, Sieglein determined that the lines were safely away from the house by at least ten feet and, therefore, he did not notify BG & E of the siding work or request that the lines be moved while the aluminum siding was installed. Jenkins, the foreman, based on his own observations, concluded that the overhead lines would not interfere with the installation and posed no danger. Campbell testified that he also noticed the overhead lines. He assumed the lines carried electricity, but since they appeared to be safely beyond the fence marking the property line, Campbell began work without any further consideration of the proximity of the lines to the job site.

The job that day consisted primarily of the installation of soffit and siding beneath a roof eave running along the east

---

**2.** Maryland's High Voltage Line Act, Md. Labor and Employment Code Ann. §§ 6–101 et seq., prohibits any person from performing work within 10 feet of overhead power lines unless the utility has first been notified and given the opportunity to take appropriate protective measures. In referring to the statute and the testimony concerning the procedure by which Sieglein contacted the utility, we do not address Sieglein's potential liability under the statute.

**3.** This line ran from one utility pole to an arm extending from a second pole. Thus, it ran in the same general direction as the other lines, but at a slightly different angle.

side of the house. The division of labor between Campbell and Jenkins was such that Campbell was engaged almost exclusively in cutting and bending soffit pieces that he then handed to Jenkins. Jenkins, in turn, took these materials up the ladder and completed the installation. The work progressed uneventfully until Jenkins needed to extend the 40 foot ladder in order to reach a point where the roof eave rose sharply to a peak. Jenkins called to Campbell, who was at a work table in the backyard, to come to the side of the house and help raise the ladder. Since the ladder weighed approximately 100 pounds and did not have a rope attached to the pulley normally used to extend the ladder, it was difficult and awkward to extend. On this day, the two men attempted to extend the ladder using a method Jenkins had devised and that the two men had used on numerous occasions without incident. Employing their unique but usual method of extending the ladder, Campbell positioned himself between the ladder and the fence. As he braced himself against the fence, while standing upon tilting cinder blocks with holes, Campbell held the ladder steady in an upright and vertical position. He did not look up towards the top of the ladder because the overhead wires appeared to him to be outside the fence. Jenkins, facing Campbell (facing away from the house and towards the overhead lines) looked up towards the overhead lines that appeared to be well outside the fence, but did not notice any wire overhead. While Campbell held the ladder steady in a vertical position, Jenkins extended the top section of the ladder upward. He then stepped up a rung on the ladder and pushed the top section farther upward. Jenkins then ascended up two (possibly more) additional rungs and repeated the procedure. As he extended the top section, he heard a noise and jumped off the ladder. The ladder had struck an overhead line later identified as an uninsulated 7,600 volt distribution line, which was approximately nine feet lower than the roof overhang. Tragically, Campbell was very seriously injured as a result of the ladder contacting the distribution line.

The Sieglein crew had apparently failed to notice the distribution line. It was closer to the house and a few feet higher than the cluster of five other overhead lines that were outside the fence that had been observed by Sieglein and the two Sieglein employees present on the job site that day.

On November 19, 1987, appellant filed this action against BG & E in the Circuit Court for Baltimore City. In his Complaint, appellant alleged that he was injured when a forty-foot ladder he helped raise contacted an overhead electrical line, and that the injuries he sustained had been caused by the negligence of BG & E.[4] BG & E countered that Campbell was barred from recovering due to his own contributory negligence. In addition, BG & E filed a Third–Party Complaint against appellant's co-workers Mark Jenkins, and his employer, William Sieglein, t/a Sieglein Roofing and Siding Company, alleging that the negligence of Jenkins and Sieglein had caused the electrical contact accident.

In the aftermath of a two-week trial (Friedman, J., presiding), the jury rendered its verdict in response to questions presented in a special verdict sheet. It found negligence on the part of BG & E and Sieglein, no negligence by Jenkins[5] and no contributory negligence or assumption of risk by Campbell. The jury awarded Campbell $4,850,000 in damages. The trial court then dismissed the jurors and, treating BG & E's earlier Motion for Judgment (upon which it had reserved ruling) as a Motion for Judgment NOV, ruled that appellant was contributorily negligent as a matter of law and granted BG & E's Motion for Judgment NOV.

Campbell appeals from the court's granting of the Motion for Judgment NOV. BG & E cross-appeals, arguing that

---

4. A strict liability count was dismissed from the Complaint on March 29, 1988. The dismissal of this second count is not before this court on appeal.

5. The jury's finding that Jenkins was not negligent was not the subject of a Motion for Judgment NOV and is not presented for our review on appeal.

should this court reverse the trial court's granting of the Motion for Judgment NOV, we should then further hold that the trial court erred in instructing the jury and should have given BG & E's proposed instructions on contributory negligence and assumption of the risk. Sieglein argues on appeal that the trial court erred in denying Sieglein's motions to dismiss and for summary judgment and in denying Sieglein's Motion in Limine.

## QUESTIONS PRESENTED

Several issues, presented by three of the parties to the litigation, are now before this court, namely:

1. Whether the trial court erred in finding contributory negligence as a matter of law and granting BG & E's Motion for Judgment NOV.

2. Whether the trial court erred in refusing to instruct the jury on comparative negligence.

3. Whether the trial court erred in not instructing the jury on the issues of contributory negligence and assumption of the risk as requested by BG & E.

4. Whether the trial court erred in denying Sieglein's motion to dismiss and motion for summary judgment.

5. Whether the trial court erred in denying Sieglein's Motion in Limine.

## ANALYSIS

1. Judgment NOV based upon Campbell's Contributory Negligence

▮ Ordinarily, the question of whether the plaintiff has been contributorily negligent is for the jury, not the judge, to decide. *Diffendal v. Kash and Karry Serv. Corp.*, 74 Md.App. 170, 536 A.2d 1175 (1988). For example, in *Potomac Edison Co. v. State*, 168 Md. 156, 177 A. 163 (1935), and *State v. Potomac Edison Co.*, 166 Md. 138, 170 A. 568 (1934), the issue of contributory negligence was held to be properly left for determination by the trier of facts because

the evidence permitted a reasonable conclusion that the decedent neither knew nor should have known that the wire was dangerous.

■ The trial court may, however, take the issue of contributory negligence from the jury and rule that there was contributory negligence as a matter of law when the undisputed facts of the case support such a finding as a matter of law. *Le Vonas v. Acme Paper Board Co.*, 184 Md. 16, 40 A.2d 43 (1944).

■ In considering a Motion for Judgment NOV, a trial judge must consider all evidence and inferences in the light most favorable to the party against whom the motion is made. Md.Rule 2–519(b). On appeal, we must likewise assume the truth of all credible evidence and all inferences of fact reasonably deducible from it tending to sustain appellant's contentions. If, in doing so, we find any legally relevant and competent evidence, however slight, from which the jury could rationally have found in Campbell's favor, we must reverse the Judgment NOV. *Franklin v. Gupta*, 81 Md.App. 345, 567 A.2d 524 (1990), citing *Impala Platinum v. Impala Sales*, 283 Md. 296, 389 A.2d 887 (1978) and *McGarr v. Boy Scouts of America*, 74 Md.App. 127, 536 A.2d 728 (1988).

In ruling on BG & E's Motion for Judgment NOV, the trial judge found that as a matter of law Campbell was contributorily negligent and stated her reasons as follows:

The Court is mindful that it must consider the question of contributory negligence in light of all the inferences that are favorable to the Plaintiff's case, that may be fairly deduced from the evidence. I find that there were really no disputes as to the material facts in this case, the facts that I think were material to the issue of contributory negligence. And I find that there was, and I'm quoting from a number of cases that counsel presented to me with regards to the issue of the court's finding as a matter of law, that there was contributory negligence, and that it was prominent and decisive and which directly

contributed to the accident and which was of such character as to leave no room for difference of an opinion by reasonable minds.

And I find that given the narrowness of the yard in which Robert Campbell and Mark Jenkins were working, clear view of the lines, to attempt to extend a heavy metal ladder in the manner in which it was raised at the point in the yard closest to the wire, rather than farthest away, is contributory negligence as a matter of law.

Appellee argues that several Maryland cases that directly address the issue of contributory negligence in electrical contact cases support the trial judge's decision to grant the Motion for Judgment NOV. We agree.

In *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 495 A.2d 838 (1985), the Court of Appeals discussed and reiterated the continued viability of a long line of cases related to contributory negligence as a matter of law in electrical contact cases such as the case presently at bar. The many cases cited in this opinion stand for the proposition that "when a person voluntarily touches, or approaches nearer than a reasonably prudent person would, an electrical wire, which he knows, or which a person of ordinary knowledge and experience would have reason to believe, is sufficiently charged with electricity to be dangerous, and in consequence thereof he is injured, it will be assumed as a matter of law that his own negligence contributed to the accident." *Liscombe v. Potomac Edison Co.*, 303 Md. at 629, 495 A.2d 838, citing, *LeVonas v. Acme Paper Board Co.*, 184 Md. at 20, 40 A.2d 43.

It is undisputed that the 7,600–volt uninsulated overhead distribution line, which Campbell claims he failed to notice, was clearly visible from the ground. Accepting as fact Campbell's testimony that he did not see the particular 7,600–volt distribution line overhead and thought that it was safe to raise the ladder near the overhead lines that he had earlier observed, there is still no question that had Campbell inspected the area more thoroughly when he first arrived,

inspected the area immediately prior to raising the ladder or simply looked straight up when he participated in raising the ladder, he would have seen the 7,600–volt distribution line overhead.[6] Campbell suspected that those overhead lines he did see carried electricity and, due to a recent accident in which he received an electrical shock, appreciated that electricity posed a danger. Despite the clear danger of nearby overhead lines, Campbell helped raise the ladder from a position directly adjacent to those overhead lines.

We are satisfied that these facts support the trial judge's ruling that Campbell was contributorily negligent as a matter of law. The applicable Maryland case law compels such a decision based on the fact that prior to participating in raising the ladder Campbell was generally aware of the existence and potential danger of nearby overhead power lines, that he appreciated the dangers such lines presented, and that he failed to look up to make certain that there were no power lines overhead.

Citing *Arkansas Power & Light Co. v. McGowan,* 227 Ark. 55, 296 S.W.2d 420 (1956), appellant argues that since he was not the foreman of the project he could rely on the foreman's determination that the site selected by the foreman Jenkins was a safe place to raise the ladder. The *Arkansas Power* decision, however, which dealt with a contact between an aluminum ladder and overhead line, is not controlling. Aside from the fact that the case was decided under Arkansas law, it was also factually different in several important respects. Unlike the case *sub judice,* McGowan was an inexperienced new worker who lacked any knowledge of the existing danger.

Under Maryland law, it is clear that a person may rely on assurances of safety made to him by others in a

---

6. Whether appellant actually saw the overhead 7,600 volt distribution line is irrelevant. He is charged with knowledge of seeing an object, which if he had used his senses, he would have seen. *Southern Md. Electric v. Blanchard,* 239 Md. 481, 490–491, 212 A.2d 301 (1965). Moreover, it is clear that appellant saw potentially dangerous wires within a few feet of the wire he actually contacted.

situation where an ordinarily prudent person would do so. *Erdman v. Johnson Brothers*, 260 Md. 190, 271 A.2d 744 (1970). It is equally clear, however, "that such assurances do not relieve a person from the duty of caring for his own safety, and a person cannot rely on another's assurances where he is aware of the danger involved or where the danger is obvious enough that an ordinarily prudent person would not so rely." *Erdman v. Johnson Brothers*, 260 Md. at 205, 271 A.2d 744.[7]

■ In presenting his argument on this point, Campbell stresses the following facts. Mr. Sieglein, who had long experience in the siding installation industry, had twice inspected the premises and failed to warn Campbell of the danger presented by the nearby overhead lines. Mr. Jenkins, Campbell's supervisor, had selected the place and method to be used to raise the ladder. Campbell's main task that day was to prepare materials to be used by Jenkins as he ascended the ladder and actually installed the material on the house. When asked to assist the foreman in extending the ladder, Campbell was called away from his other duties preparing soffit material in the backyard. Campbell's role in raising the ladder was simply to hold the base of the ladder straight and upright and, given the manner in which the ladder was raised, Campbell's attention was naturally focused on holding the base of the ladder steady.

Aside from a concern that a superior's failure to warn an employee of danger amounts to an assurance of safety, we are not convinced by appellant's argument for a more basic reason. Campbell knew of the existence of overhead lines only a few feet behind the fence he used to brace himself as he held the ladder upright. He appreciated that these lines were potentially dangerous. While his supervisors may not have warned Campbell of the potential danger of extending the ladder so near overhead lines, and hence implicitly

---

7. This same principle was applied in an electrical contact case in *Driver v. Potomac Electric*, 247 Md. 75, 230 A.2d 321 (1966).

assured him that the operation was safe, Campbell was not relieved from the duty of caring for his own safety. The potential danger was obvious and even if Campbell did not see the particular line that caused his injuries, he knew that potentially dangerous wires were nearby and would have seen the distribution line had he simply looked overhead. By raising the ladder in the vicinity of potentially dangerous overhead lines and not looking up or otherwise ascertaining that this was a safe place to raise the ladder, Campbell, who had approximately seven years experience as a siding installer or helper, failed to care for his own safety despite an obvious danger and was, therefore, as a matter of law, contributorily negligent.

Accordingly, as we hold that there exists no reasonably competent evidence from which a jury could rationally find that Campbell was not contributorily negligent, we must affirm the trial court's granting of BG & E's Motion for Judgment NOV.

### 2. Comparative Negligence Instruction

Despite Campbell's criticism of Maryland's law of contributory negligence as "a vestigial doctrine, likely to be replaced sooner or later by comparative negligence," we are bound by the Court of Appeals' clear rejection of the doctrine of comparative negligence. We hold, therefore, that the trial court did not err in refusing to instruct the jury on comparative negligence. *Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 456, 456 A.2d 894 (1983).

Having affirmed the trial court's granting of BG & E's Motion for Judgment NOV on the basis of Campbell's contributory negligence, we need not address the other issues raised by BG & E and Sieglein.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.