PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1438

JAMIE MEYERS,

Plaintiff - Appellant,

v.

MICHAEL EUGENE LAMER; CARROLL COUNTY FOODS, LLC, d/b/a
Performance Foodservice–Carroll County,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Stephanie A.  Gallagher, Magistrate
Judge.  (1:11-cv-03507-SAG)

Argued:  December 10, 2013      Decided:  February 25, 2014

Before KING, GREGORY, and FLOYD, Circuit Judges.

Vacated and remanded with instructions by published opinion.
Judge Floyd wrote the opinion, in which Judge King and Judge
Gregory joined.

**ARGUED**:  Paul  David  Bekman,  Emily  C.  Malarkey,  SALSBURY,
CLEMENTS, BEKMAN, MARDER & ADKINS, LLC, Baltimore, Maryland, for
Appellant.   Brian  S.  Goodman,  PESSIN  KATZ  LAW,  P.A.,  Towson,
Maryland, for Appellees.  **ON BRIEF**: Robert S. Campbell, PESSIN
KATZ LAW, P.A., Towson, Maryland, for Appellees.

FLOYD, Circuit Judge:

Jamie Meyers was working in a utility bucket positioned above an unblocked lane of traffic when a tractor-trailer truck driven by Michael Lamer struck the bucket. As a result of the collision, Meyers was ejected from the bucket and suffered injuries to his back and lower body. Meyers then sued Lamer and Lamer's employer for negligence pursuant to Maryland state law. The parties cross-moved for summary judgment, and the district court granted summary judgment to Lamer and his employer and denied summary judgment to Meyers. This appeal ensued. For the reasons that follow, we vacate the judgment below and remand with instructions.

I.

On February 16, 2009, Jamie Meyers was performing work for Rommel Engineering & Construction, Inc. ("Rommel"), a company that contracts with the State of Maryland to maintain traffic signals and streetlights. Meyers's task that day was to replace the traffic signals at the intersection of Maryland Route 5 and Maryland Route 249. This work required Meyers to be in a boom-supported bucket positioned above the intersection. Eric Hatfield, who was also employed by Rommel, accompanied Meyers as Meyers's groundsman. Hatfield's task was to watch for oncoming traffic—especially at times when Meyers's work required that he

2

turn his back to oncoming traffic—and to warn Meyers when a vehicle was approaching so that Meyers could, if necessary, increase the clearance between the ground and the bottom of the bucket using controls in the bucket.

The set-up for the worksite, which was determined by Rommel's superintendent, Dan McMunn, was as follows. Meyers and Hatfield each parked a vehicle along the shoulder of Route 5: for Meyers, a utility truck with an extendable boom and a bucket at the end of the boom, and for Hatfield, a heavy-duty pick-up truck. Meyers's truck was parked closer to the intersection with Hatfield's truck parked behind it, making the rear of Hatfield's truck the first vehicle that drivers would see as they approached the intersection in the lane adjacent to the shoulder where the trucks were parked. Hatfield's truck had a light board that displayed blinking lights to signal "caution," as well as flashing strobe lights, both of which were activated during the time that Meyers was performing work. Meyers's truck also had flashing strobe lights.

Additionally, Meyers and Hatfield placed warning signs along the shoulder of Route 5 to indicate that work was being performed ahead and that drivers should proceed with caution. This included placing signs at distances of one-and-one-half miles, one mile, one-half mile, and one-quarter mile before the intersection as northbound traffic approached the intersection.

3

In the 100 feet immediately prior to the intersection, Meyers and Hatfield placed cones along the line separating the vehicle travel lane from the shoulder of Route 5, where their trucks were parked. Notably, Meyers and Hatfield did not close the northbound lane of travel adjacent to the shoulder or use flagmen with signs to allow traffic to pass only intermittently. The parties and their experts dispute whether failure to close the lane of travel or use flagmen was consistent with the standard of care for the industry.

The incident giving rise to the underlying lawsuit occurred when a tractor-trailer truck owned by Carroll County Foods, LLC, and driven by Michael Lamer (together, "Appellees") collided with Meyers's bucket. Deposition testimony revealed that Meyers had told Hatfield that he had to turn his back to the northbound lane of traffic on Route 5 to perform his work and that Hatfield told Meyers, "[N]o problem, I got you." Meanwhile, Lamer was talking to his wife on his cell phone as he approached the intersection where Meyers was working and did not notice the caution signs placed alongside the shoulder of the road leading up to the intersection. Lamer did see Meyers's bucket but thought that there was enough clearance between the top of his truck and the bucket to safely pass beneath it. Lamer's estimation regarding the clearance turned out to be erroneous and, as a result, his truck collided with Meyers's bucket.

4

Immediately after the collision, Lamer slammed on his brakes and skidded to a stop.

As a result of the collision, Meyers was ejected from the bucket. Although Meyers was wearing a safety harness, he nevertheless suffered injuries to his back and lower body. On October 27, 2011, Meyers sued Appellees in Maryland state court, alleging that Lamer failed to, inter alia, "keep a proper lookout," "appreciate that the tractor trailer he was operating would not go under the boom-bucket," and "carefully and prudently apply his brakes so as to avoid a collision." Appellees subsequently removed the action to the district court based on diversity of citizenship.

Following discovery, the parties cross-moved for summary judgment. The district court granted Appellees' motion and denied Meyers's motion, each on the bases that Meyers assumed a risk that he would be struck by a tractor-trailer truck while working above an open lane of traffic and because Meyers was contributorily negligent. Meyers then timely filed this appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

II.

This Court reviews the grant of summary judgment de novo. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc). Summary judgment is appropriate "if

5

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any reasonable inferences are to be drawn in favor of Meyers, as the nonmoving party.[1] See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). Because the district court had jurisdiction over this case below based on the diversity of the parties, see 28 U.S.C. § 1332, we apply Maryland state law. Indus. Enters., Inc. v. Penn Am. Ins. Co., 637 F.3d 481, 487 (4th Cir. 2011).

As noted above, the district court granted summary judgment to Appellees on the grounds that Meyers assumed a risk that the bucket would be hit by a vehicle passing beneath it and because Meyers was contributorily negligent. We address these reasons in turn.

---

[1] Although Meyers's Notice of Appeal indicates an intent to appeal both the denial of his motion for summary judgment and the grant of Appellees' motion for summary judgment, Meyers confines his arguments on appeal to the latter motion only. This is evident by looking at Meyers's prayer for relief in his opening brief and reply brief, wherein Meyers asks that "this Court reverse the decision of the District Court, and remand this case for a trial on the merits." Accordingly, Meyers waived any appeal of the district court's denial of his motion for summary judgment. See Canady v. Crestar Mortg. Corp., 109 F.3d 969, 973–74 (4th Cir. 1997) (issues raised in notice of appeal but not briefed on appeal are deemed waived).

6

A.

The assumption-of-risk doctrine "is grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk." Crews v. Hollenbach, 751 A.2d 481, 488 (Md. 2000). "[T]o establish the defense of assumption of risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." ADM P'ship v. Martin, 702 A.2d 730, 734 (Md. 1997). Maryland's courts apply a hybrid objective-subjective standard to determine whether an injured plaintiff had the requisite knowledge and appreciation of the risk. See C&M Builders, LLC v. Strub, 22 A.3d 867, 882–83 (Md. 2011). More specifically,

> [I]t is [ordinarily] for the jury to determine whether a plaintiff knew of the danger, appreciated the risk, and acted voluntarily. . . . [But] "when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue [concerning knowledge, appreciation of the danger and voluntariness] is for the court."

Warsham v. James Muscatello, Inc., 985 A.2d 156, 168 (Md. Ct. Spec. App. 2009) (fifth alteration in original) (citations omitted) (quoting Schroyer v. McNeal, 592 A.2d 1119, 1123 (Md.

7

1991)).  If the plaintiff is determined to have assumed a risk, then the assumption of that risk "completely bars" any recovery. Id. at 167.

Meyers argues that the assumption-of-risk doctrine does not apply to him because he was a "worker[] engaged in work-related tasks in the roadway."  For this argument, Meyers relies on Clayborne v. Mueller, 284 A.2d 24, 29 (Md. Ct. Spec. App. 1971) (Clayborne I), aff'd, 291 A.2d 443 (Md. 1972) (Clayborne II). There, a police officer was struck by a passing motorist who did not see the officer standing alongside the road while the officer was talking to a stopped motorist that he had pulled over.  Id. at 25-26.  In affirming the trial court's verdict in favor of the officer and against the passing motorist, the appellate court noted that the assumption-of-risk doctrine "is not applicable to those persons such as workers in the street, traffic directors or police officers exercising traffic control and regulation enforcement if they are in the course of the normal pursuit of their duties."  Id. at 28-29.  Maryland's highest court—the Maryland Court of Appeals—affirmed this holding, concluding that because the officer "was following usual police procedure, there can be no basis for a claim that he, as a matter of law, voluntarily assumed the risk of an obvious danger."  Clayborne II, 291 A.2d at 447.

Appellees claim that Meyers waived any argument concerning applicability of the assumption-of-risk defense because Meyers's arguments in the district court pertained to the merits of that defense only, to wit, whether Meyers assumed a risk. Although Appellees are correct that Meyers did not challenge the applicability of the assumption-of-risk defense below—which would normally lead us to conclude that the argument was waived on appeal, see Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999)—it is the fundamental province of this Court to decide cases correctly, even if that means considering arguments raised for the first time on appeal (or not raised by the parties at all). See Kirby v. Allegheny Beverage Corp., 811 F.2d 253, 256 n.2 (4th Cir. 1987) ("Although this point was not presented to the district court or raised by the parties on appeal, that does not preclude this Court from considering it sua sponte, in order to reach the correct result." (citation omitted) (internal quotation marks omitted)); Artrip v. Califano, 569 F.2d 1298, 1300 n.5 (4th Cir. 1978) ("Normally, this court would not entertain an appeal where the record does not indicate that the issues were raised below, but where necessary to reach the correct result, and where the record provides an adequate basis for consideration on the merits, we will review such issues."); see also Seney v. Rent-A-Center, Inc., 738 F.3d 631, 635 n.3 (4th Cir. 2013) (citing Kamen v.

9

Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) ("When an issue . . . is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.")). In this case, permitting Appellees to avail themselves of the assumption-of-risk defense when Maryland law carves out an exception for "persons such as workers in the street . . . in the course of the normal pursuit of their duties," Clayborne I, 284 A.2d at 29, would be contrary to the rule of law.

In response, Appellees advance three arguments. First, Appellees claim that the Clayborne cases "involved a police officer and, therefore, any reference to highway workers was no more than dicta." We see no reason, however, why workers such as Meyers should not also be covered by the exception, particularly in light of the fact that the court in Clayborne I listed "workers in the street" in its serial recitation of those classes of persons to whom the assumption-of-risk doctrine is not applicable. See 284 A.2d at 29. Second, Appellees argue that "[m]ore modern cases [since Clayborne] have applied the doctrine of assumption of risk where the plaintiff is engaged in a dangerous profession." For this assertion, Appellees rely on Crews. In Crews, the foreman of a gas-line repair team sued various defendants after he was injured by an explosion while

10

attempting to fix a gas-line leak, 751 A.2d at 484–85, and the Maryland Court of Appeals held that the assumption-of-risk defense applied and barred the plaintiffs' recovery, see id. at 489. Notably, the Crews court did not reference the Clayborne cases, perhaps because the plaintiff was plainly not a "worker[] in the street, traffic director[] or police officer[] exercising traffic control and regulation enforcement," Clayborne I, 284 A.2d at 29.

Finally, Appellees argue that Clayborne II abrogated the central holding from Clayborne I upon which Meyers relies. To be sure, the court in Clayborne II did state that, "It is not necessary to describe police officers acting pursuant to their duties as having a 'special status'. They, like all other persons, must act reasonably under all of the circumstances . . . ." 291 A.2d at 447. Whether a plaintiff acts reasonably, however, goes to the issue of the plaintiff's contributory negligence—which was also at issue in the Clayborne cases—and not the plaintiff's assumption of risk, which looks instead at the inherent dangers of a particular activity. Compare Kassama v. Magat, 792 A.2d 1102, 1110 (Md. 2002) ("Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection . . . ." (citation omitted) (internal quotation marks omitted)), with Poole v. Coakely & Williams Constr., Inc.,

11

31 A.3d 212, 227 (Md. 2011) ("When a risk is a foreseeable consequence of engaging in a particular activity, we have reasoned that there is an implied consent to relieve others of liability for injury and assumption of the risk may be established as a matter of law."). Further, given the court's statement in Clayborne II that "there can be no basis for a claim that [the police officer], as a matter of law, voluntarily assumed the risk of an obvious danger," 291 A.2d at 447 (emphasis added), we do not think that Clayborne II disturbed the holding from Clayborne I upon which Meyers relies.

Accordingly, we need not assess the merits of Appellees' assumption-of-risk defense insofar as Meyers's status as a "worker[] in the street" precludes Appellees from relying on the defense that Meyers assumed the risk that the bucket would be struck by a vehicle passing beneath it. We turn now to whether Meyers was contributorily negligent.


B.

In Maryland, "[c]ontributory negligence is the failure to observe ordinary care for one's own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." Menish v. Polinger Co., 356 A.2d 233, 236 (Md. 1976) (citation omitted) (internal quotation

12

marks omitted).  "Ordinarily, the question of whether the plaintiff has been contributorily negligent is for the jury, not the judge, to decide."  Campbell v. Balt. Gas & Elec. Co., 619 A.2d 213, 216 (Md. Ct. Spec. App. 1993); see also Williamson Truck Lines, Inc. v. Benjamin, 222 A.2d 375, 379 (Md. 1966) ("It is only where the minds of reasonable persons cannot differ that the court is justified in deciding [contributory negligence] as a matter of law.").  Like the assumption-of-risk defense, a determination that a plaintiff was contributorily negligent serves as a complete bar to recovery against a defendant who was also negligent.  Woolridge v. Price, 966 A.2d 955, 961 (Md. Ct. Spec. App. 2009).  That is to say, even if the plaintiff is determined to be only one percent negligent in an accident and the defendant ninety-nine percent negligent, the plaintiff is still denied recovery.  See Harrison v. Montgomery Cnty. Bd. of Educ., 456 A.2d 894, 898 (Md. 1983) ("[A] plaintiff who fails to observe ordinary care for his own safety is contributorily negligent and is barred from all recovery, regardless of the quantum of a defendant's primary negligence.").  Although the great majority of the States employ a comparative-negligence system that awards damages as a pro rata percentage of fault, the Maryland Court of Appeals recently reaffirmed its commitment to the doctrine of contributory negligence.  Coleman v. Soccer Ass'n of Columbia, 69 A.3d 1149, 1152 (Md. 2013).  Appellees, as

13

the defendants, bear the burden of proving that Meyers was contributorily negligent. McQuay v. Schertle, 730 A.2d 714, 720 (Md. Ct. Spec. App. 1999).

1.

Before assessing the merits of the contributory-negligence defense in this case, we first address briefly an evidentiary issue relating to the admissibility of Meyers's expert report. In opposition to Appellees' motion for summary judgment and in support of his own motion for the same, Meyers submitted the expert report of Richard Balgowan, a professional engineer, who concluded that the worksite was set up in accordance with the standard of care for the industry. Appellees maintain on appeal, as they did at summary judgment, that Balgowan's report is inadmissible because it was not authenticated or accompanied by a sworn affidavit. See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). Appellees further contend that without Balgowan's expert report, Meyers did not present any evidence demonstrating that he took the necessary precautions in accordance with industry standards to ensure his safety, and thus, there was nothing in the record to preclude summary judgment to Appellees as to Meyers's contributory negligence.

We review the trial court's decision regarding whether to admit evidence into the summary judgment record for an abuse of

14

discretion.  Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 111 (4th Cir. 1993).  Here, it is unclear whether the magistrate judge considered Balgowan's report in determining that Meyers was contributorily negligent insofar as the summary judgment order is completely void of any mention of Balgowan's report (and is likewise silent with respect to the report of Appellees' opposing expert).  Regardless, we need not decide whether Balgowan's report should have been admitted or excluded at summary judgment because, as we explain below, other evidence tended to show that a material factual dispute for the jury exists as to what precautions and actions a reasonable person in Meyers's position would have taken.

2.

On the merits, Appellees claim that "Meyers is chargeable with foreseeing that a tractor-trailer may enter the lane of travel where he had positioned the bucket and [with] guard[ing] against that event."  More specifically, Appellees assert that Meyers was contributorily negligent because he failed to block off the lane of traffic where Lamer traveled and turned his back to oncoming traffic during a time that he knew that the bucket was in an unsafe position.  Appellees also claim that Meyers "cannot rely upon any purported lookout being provided by Mr.

15

Hatfield as an indication that Mr. Meyers took care for his personal safety."

The parties and district court all discuss Campbell, in which a worker's supervisor gave assurances to the worker that all power lines were a safe distance from a building on which work was to be performed. 619 A.2d at 215. The supervisor failed to notice a particular line that was not a safe distance away from the building, however, and the worker was injured when a metal ladder that he was holding came into contact with the line. Id. at 215. The worker sued a utility company that operated the power line for negligence and, after the worker received a verdict in his favor, the trial court granted the utility company's motion for judgment as a matter of law on the basis that any recovery for the worker was barred by his contributory negligence. Id. at 216.

At the outset, we note that this case is markedly distinguishable from Campbell because in Campbell, the power line that caused the injury was stationary and could have been fully inspected by the plaintiff himself prior to lifting the ladder. See 619 A.2d at 615. By contrast, the vehicles passing beneath Meyers were moving, and it is undisputed that certain tasks required that Meyers turn his back to traffic. Indeed, Appellees' own expert conceded as much during his deposition:

16

> [The groundsman] acts as [the bucketman's]
> eyes to approaching traffic. . . . [T]he man
> in the bucket is doing other work and may
> not be able to pay full-time . . . attention
> to the approaching traffic. . . . [It]'s the
> job of the groundsman to watch what's
> approaching and if he sees a large vehicle
> coming, to let the bucketman, or Mr. Meyers
> in this case, to let him know that there is
> a large vehicle approaching.

Nevertheless, Appellees seize on the Campbell court's language that

> assurances [of safety from another person]
> do not relieve a person from the duty of
> caring for his own safety, and a person
> cannot rely on another's assurances where he
> is aware of the danger involved or where the
> danger is obvious enough that an ordinarily
> prudent person would not so rely.

Id. at 218 (citation omitted)(internal quotation marks omitted). The court noted immediately before this statement, however, that "[u]nder Maryland law, it is clear that a person may rely on assurances of safety made to him by others in a situation where an ordinarily prudent person would do so." Id. (emphasis added). In affirming the trial court's grant of the utility company's motion, the Campbell court looked to "Maryland cases that directly address the issue of contributory negligence in electrical contact cases," id. at 217; thus, to resolve the issue before us, we will do the same with respect to cases involving road-workers and vehicular accidents.

17

In Schutz v. Breeback, a road-worker was injured by a moving vehicle when the worker had his back turned to oncoming traffic and was working in the lane of traffic adjacent to the shoulder of the road. 178 A.2d 889, 890 (Md. 1962). As in this case, there were warning signs placed alongside the road in Schutz, which the driver of the vehicle that struck the plaintiff, like Lamer, did not see. Id. The defendant-motorist argued on appeal that the signs were not placed in the proper locations per state regulations, and thus the plaintiff contributed to his own injury. Id. The plaintiff, in turn, argued that "even if you find that the foreman who was in charge of this [crew] of which the plaintiff was a member did not place that sign in conformity with regulations of the State Roads Commission, that cannot be held against the plaintiff in this case who was a subordinate employee." Id. at 890-91 (internal quotation marks omitted). The Maryland Court of Appeals affirmed the trial court's ruling that the plaintiff was not contributorily negligent as a matter of law, noting that, "It is generally recognized that workmen in the highway cannot be as alert as pedestrians or other travelers, and they are said to occupy a special status. The question whether such a worker has exercised reasonable care is ordinarily left to the jury." Id. at 891; see also Williamson, 222 A.2d at 383 ("A person engaged in repairing or assisting the movement of a vehicle on the

18

highway . . . . is not bound to anticipate negligence on the part of the operators of approaching vehicles, and[] . . . . he need not continuously watch for approaching vehicles where the nature of the work in which he is engaged requires his attention.").

Here, the principal reason upon which the district court based its grant of summary judgment to Appellees was Meyers and Hatfield's failure to take additional precautions. The district court also stated that "Hatfield's role as 'lookout' did not relieve Mr. Meyers from the duty of caring for his own safety. Even if the ultimate decisions as to which safety measures to employ could not be made by Mr. Meyers unilaterally, at the time he controlled the bucket, he was aware that the travel lane remained open to all traffic." The question to be resolved, however, is not whether Meyers could have done more to protect himself, but rather whether an "ordinarily prudent person under the same or similar circumstances" would have turned his back to continue working, as Meyers did. Menish, 356 A.2d at 236; see also id. (standard for assessing plaintiff's conduct is that of a reasonable person, "not that of a very cautious person"). Given (1) that Hatfield told Meyers prior to Meyers turning his back, "I got you. No problem. Don't worry about it.", and (2) Meyers's undisputed testimony that he "had no choice, no matter what kind of training [he] ha[d], [but] to put [him]self

19

in a [vulnerable] position that[] [was] underneath the [traffic] signal" to perform his work,[2] (J.A. 95), there is "room for difference of opinion . . . by reasonable minds" as to whether Meyers was contributorily negligent by not keeping a constant watch himself. Faith v. Keefer, 736 A.2d 442, 443 (Md. Ct. Spec. App. 1999) (emphasis omitted) (citation omitted) (internal quotation marks omitted).

Moreover, a party "is charged with notice of . . . what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens." Menish, 356 A.2d at 237 (citation omitted) (internal quotation marks omitted). Meyers testified that he and Hatfield had worked together "pretty much everyday" and "for years," and there is nothing in the record to indicate that Hatfield previously failed to warn Meyers (or any repairman) to adjust the height of the bucket or that collisions with tractor-trailers "usually happen[]" when a worker is in a bucket and has an assistant on the ground keeping watch for approaching, high-clearance

---

[2] Although we decline to make a ruling on the admissibility of Balgowan's expert report, we note that Balgowan, like Meyers, also testified that Meyers "would have [to] put himself in a position [where the bucket might get hit] to do the work that he needed to do at the time." (J.A. 431; see id. at 440 (same).) Although Appellees stridently contest the admissibility of Balgowan's report, they never dispute this aspect of Balgowan's testimony.

vehicles. Meyers was thus entitled to rely on Hatfield to provide fair warning to him. See id. at 237–38 ("Absent actual or constructive knowledge to the contrary, one may act on the assumption that he will not be exposed to danger that will come only by the breach of duty which another owes him."). Summary judgment on the basis that Meyers was contributorily negligent was therefore inappropriate.

III.

For the reasons set forth above, we vacate the district court's ruling that Meyers assumed the risk that the bucket would be struck by a vehicle because Meyers's status as a worker in the street precludes availability of the assumption-of-risk defense to Appellees. Further, we vacate the district court's ruling that Meyers was contributorily negligent and remand this case for trial.

In remanding, we recognize that Meyers faces a difficult and daunting task of convincing a jury that he was not contributorily negligent—not even one iota. That said, it is not our duty to weigh whether the actions taken by Meyers amount to negligent conduct. See Balt. Transit Co. v. State ex rel. Castranda, 71 A.2d 442, 447 (Md. 1950) ("In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive

21

act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds.").  Thus, remand is appropriate.

VACATED AND REMANDED
WITH INSTRUCTIONS

22